Kenneth Lee LINCICOME, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–98–0255–CR.

Court of Appeals of Texas,
Amarillo.

Sept. 24, 1999.

Kent Birdsong, Amarillo, for appellant.

James A. Farren, Crim. Dist. Atty., Kristi Wright, Wesley G. Clayton, Asst. Crim. Dist. Attys., Canyon, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

BRIAN QUINN, Justice.

Kenneth Lee Lincicome (appellant) appealed from a judgment convicting him of committing serious bodily injury to a child. He presented us with three issues. The

first concerned the trial court's failure to grant him a new trial; he believed himself entitled to one "due to impermissible jury conduct." The second encompassed the factual sufficiency of the evidence, while the third involved the admission of evidence of extraneous offenses. We affirm.

## Background

Appellant was tried and convicted for intentionally committing serious bodily injury upon his ten-week-old child. Evidence of record illustrated that he attempted to smother his ten-week-old child with a pillow. He admitted as much to his neighbor and to a judge in a separate matter. Furthermore, having been deprived of oxygen due to appellant's act, the infant suffered permanent brain damage, reduced head size and emotional disturbance.

### Issue One—New Trial Due to Jury Misconduct

Again, as his first issue, appellant raised the spectre of jury misconduct. Allegedly, the jury considered "punishment evidence" while deliberating appellant's guilt. Furthermore, consideration of that evidence purportedly influenced it to find him guilty of the offense which carried the harsher sanction, that is, causing serious injury to a child.[1]

The court was informed of the supposed misconduct via a motion for new trial. Among other things, appellant alleged that the jury asked the court to inform it of the punishment applicable to each offense. When the court refused to do so, the jury then divined which offense carried the greater penalty and found him guilty of it. Furthermore, an effort was made to substantiate the latter allegation via an attachment to the new trial motion. The attachment consisted of an affidavit by appellant's counsel purporting to verify a newspaper article, which article contained a quotation allegedly uttered by the jury foreman.

At the ensuing hearing upon the motion for new trial, the state objected to the admission of the newspaper article, contending that it was hearsay. The trial court sustained the objection and excluded it. However, the article was accepted as part of a bill of exceptions. Aside from tendering the jury's inquiry about which offense carried the greater punishment, no other evidence was offered by appellant. Thereafter, the trial court overruled the motion.

### 1. Standard of Review

■ Whether to grant a motion for new trial lies within the trial judge's considered discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). Furthermore, the exercise of his decision cannot be disturbed unless we conclude that the jurist acted arbitrarily or unreasonably. *Id.*

■ Next, motions for new trial are not self-proving. *Lamb v. State*, 680 S.W.2d 11, 13 (Tex.Crim.App.1984). Indeed, the allegations uttered therein must be established through competent evidence. And, while that evidence may be presented via affidavits pursuant to Texas Rule of Appellate Procedure 21.7, the affidavits must be offered to and received by the court before their content can be considered evidence. *McIntire v. State*, 698 S.W.2d 652, 658 (Tex.Crim.App.1985); *Lamb v. State*, 680 S.W.2d at 13.

### 2. Application of Standard

■ Assuming *arguendo* that it is improper for a jury to consider the range of punishment attributable to an offense when determining one's culpability for that offense, the question remains whether appellant proved that such occurred at bar. He attempted to do so through the presentation of 1) a newspaper article that purportedly contained statements of the jury foreman and, 2) the jury's question regarding the punishment applicable to each offense which appellant was accused of com-

---

1. The state indicted appellant for attempted murder and causing serious injury to a child.

mitting. However, the former cannot be considered. This is so because it was excluded from evidence and appellant did not challenge the court's decision to exclude it. In other words, if the article was excluded and appellant did not complain of the exclusion, we have no authority to consider it as evidence supporting his contention.

■ That the document may have been incorporated into a bill of exceptions does not alter our decision. Since the advent of *Foreman v. Texas Employers' Ins. Ass'n,* 150 Tex. 468, 241 S.W.2d 977 (1951), it has been clear that matters contained within a bill of exceptions are not evidence from which inferences of fact may be drawn. *Id.* at 978–79. That is, a bill of exceptions serves merely to capture and subsequently manifest a particular act about which one may complain. *Id.* It is analogous to a snapshot of an event, which snapshot aids a reviewing court to see what occurred and determine whether the event constituted error. However, the contents of the snapshot are not susceptible to consideration as evidence illustrative of anything other than the fact that the event captured within its borders occurred.

■ Another reason also exists that prevents us, and prevented the trial court, from considering the article. That reason concerns the tenor of the statement involved. The article purportedly quoted the foreman of appellant's jury as saying that " '[w]e had people who wanted to go attempted murder ... [b]ut we realized this other [offense] was the first degree felony.' " As can be readily seen, the supposed statement depicts the comments and mental processes of the jurors while deliberating. It says nothing of how the jurors came to know that one offense carried a greater penalty than the other. As such, it was inadmissible in effort to impeach the verdict. *See* Tex.R. Evid. 606(b) (prohibiting a juror from testifying about any matter or statement occurring during deliberations or concerning a juror's mental processes or mind, except when testifying about outside influences improperly brought to bear upon any juror or to rebut a challenge to a juror's qualifications). Simply put, because the statement involved nothing other than comments uttered by jurors during deliberation, as opposed to testimony about how the jurors were informed by an outside source of the punishment applicable to each offense, it was inadmissible. *See Wooten v. Southern Pacific Transp. Co.,* 928 S.W.2d 76, 78–79 (Tex.App.—Houston [14th Dist.] 1995, no writ) (rejecting a juror's attempt to testify about another juror's observations uttered during deliberation because they were uttered during deliberation and concerned the juror's mental processes).

■ Thus, we are left with the jury's question about the range of punishment as the only evidence supporting appellant's contention. Yet, it too is deficient given the court's response to the missive. Specifically, the trial judge instructed the jurors to "not concern [them]selves with possible punishments" and to "confine [their] deliberations to a determination of whether the [appellant] is guilty of an offense, or not guilty." Furthermore, we are obligated to presume that the jurors complied with the admonishment until shown otherwise by competent evidence. *Smith v. State,* 898 S.W.2d 838, 880 (Tex.Crim.App. 1995). Since appellant has not shown via competent evidence that the jurors disregarded the instruction, nothing before us negates the presumption. Consequently, the record lacks evidence establishing jury misconduct, which, in turn, prevents us from holding that the trial court abused its discretion in denying new trial.

### Issue Two—Sufficiency of the Evidence

Through his second issue, appellant challenges the "factual" sufficiency of the evidence to support his conviction. Specifically, he argues that the evidence did not prove beyond reasonable doubt that he caused his infant child serious bodily injury. We disagree.

*1. Standard of Review*

In assessing the verdict's factual sufficiency, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Hall v. State,* 970 S.W.2d 137, 140 (Tex. App.—Amarillo 1998, pet. ref'd); *Bruno v. State,* 922 S.W.2d 292, 293 (Tex.App.—Amarillo 1996, no pet.). In making that assessment, however, we continue to defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from the evidence, to resolve credibility issues, and to determine who to believe or disbelieve is not ours but the jury's. *Depauw v. State,* 658 S.W.2d 628, 633–34 (Tex.App.—Amarillo 1983, pet. ref'd).

Next, the term "serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon 1994). In turn, "bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* at § 1.07(a)(8). Given these definitions, we conclude that the state has several ways to prove serious bodily injury. That is, it can do so through evidence that the physical pain, illness or impairment of a physical condition 1) created a substantial risk of death, 2) caused death, 3) caused serious permanent disfigurement, or 4) caused protracted loss or impairment of the function of any organ or member of the body.

### 2. Application of Standard

Evidence of record illustrates that appellant attempted to smother his infant son with a pillow. Other evidence illustrates that when appellant removed the pillow from over the baby's face, the infant was limp or unconscious, breathing erratically, if at all, and turning blue. The state's medical expert testified that the infant was deprived of oxygen by appellant via the use of a pillow, which deprivation could have resulted in death. Being deprived of oxygen to such an extent that one goes limp or becomes unconscious, turn's blue, and breathes erratically is, in our estimation, evidence of an impairment to a physical condition. We further conclude that this impairment to the infant's physical condition created a substantial risk of death because the want of oxygen to the brain can cause death. Thus, the record contains some evidence of a bodily injury creating a substantial risk of death.

So too does the record illustrate bodily injury causing serious permanent disfigurement and protracted loss or impairment of the function of an organ or member of the infant's body. That is, evidence appeared of record indicating that the size of the infant's brain and head placed him within the fifth percentile, meaning that 95 out of 100 children of comparable age would have larger heads and brains. According to expert testimony, this condition was also caused by appellant's attempt to suffocate the ten-week-old baby.[2] Simply put, in attempting to smother the boy, appellant deprived him of oxygen which caused the child to suffer permanent brain damage. The brain was not growing; thus, the head was not growing. This circumstance we view to be proof of serious permanent disfigurement and protracted loss or impairment of the function of an organ.

That the state's medical expert conceded that other circumstances totally unrelated to the act of suffocation could have caused the same injury does not render the verdict factually insupportable. The concession may have been enough to render the doctor's opinion as to the cause of the child's trauma less than utterly certain.

---

2. Evidence appears of record indicating that appellant admitted to several individuals that he attempted to suffocate the child after it had cried for approximately an hour. However, other evidence indicates that appellant told emergency room technicians that the baby simply stopped breathing while it was playing.

Indeed, the doctor admitted that he spoke of probabilities, not certainties. Nevertheless, the testimony constituted some evidence of appellant causing his son to suffer serious bodily injury. The jury was free to believe it or not. So too was it free to resolve any credibility issues which may have arisen because the doctor 1) had been paid to review records and render an opinion and, 2) had reviewed nothing other than medical records in deriving an opinion. Yet, the evidence as to other potential causes of the injury and questions surrounding the doctor's credibility were not so overwhelming as to render the jury's decision clearly wrong or unjust. In short, the verdict enjoys both legally and factually sufficient evidentiary support.

### Issue Three—Admission of Extraneous Offense

Lastly, appellant contends that the trial court erred in allowing a witness to testify about other wrongs of the accused during the guilt-innocence phase of the trial. The extraneous act consisted of evidence illustrating that appellant burned the infant's hand by intentionally placing it on a hot pan. He committed the act to purportedly teach the two and one-half month old boy to forego touching hot things. We find no error in the court's decision admitting the evidence.

#### 1. Standard of Review

■■■ Whether the trial court erred in admitting evidence of extraneous offenses depends upon whether it abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). The latter occurs when the decision made falls outside the zone of reasonable disagreement. *Id.* Furthermore, it cannot be said that the decision falls outside that zone if it can be supported under any theory of law. *Weatherred v. State*, 975 S.W.2d 323, 323 (Tex.Crim.App.1998). That the theory went unmentioned at trial matters not.

Next, a court may admit evidence of other crimes and wrongs if the crime for which the accused is being tried is an assaultive offense arising under chapter 22 of the Texas Penal Code. TEX.CRIM. PROC. CODE ANN. art. 38.37, §§ 1 & 2 (Vernon's Supp.1999). However, several conditions must be satisfied. First, the victim of the assault must be under 17 years of age. *Id.* at 38.37, § 1. Second, the evidence must bear on a relevant matter, such as the accused's state of mind or the previous and subsequent relationship between the accused and child. *Id.* at 38.37, § 2(1) & (2). And, third, notice of the state's intent to admit the evidence must be imparted to the accused if the latter timely requests same. *Id.* at 38.37, § 3.

#### 2. Application of Standard

■■ The act for which appellant was tried and convicted was made criminal under section 22.04 of the Texas Penal Code. Being there found, it was an assaultive offense within chapter 22 of the Penal Code. Moreover, the victim of the assault was an infant far less than 17 years old. Additionally, since appellant purportedly burned the child to teach it a lesson, it can quite easily be said that the evidence served the purpose of illustrating both appellant's mind-set towards and interaction with the child; in other words, the evidence bore on the relationship between appellant and the victim. Finally, that the state intended to offer evidence of other acts involving injury to the child was afforded appellant via its response to his request for same. Given the foregoing indicia, we conclude that the elements triggering the application of art. 38.37 of the Texas Code of Criminal Procedure were met. Thus, the evidence was admissible under said article, and the trial court did not abuse its discretion in admitting it.

Having rejected the issues asserted by appellant, we affirm the judgment rendered below.