COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-446-CR
 
 
VICKIE DAWN JACKSON                                                        APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 235TH DISTRICT COURT 
OF COOKE COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Vickie Dawn Jackson pleaded guilty to theft between $1,500 and $20,000, a state 
jail felony, and was assessed a one-year sentence in the State Jail Division of 
the Texas Department of Criminal Justice.  With the trial court’s 
permission, Appellant raises five points on appeal concerning her guilty plea.  
We will affirm.
I. Factual Background and Procedural History
        On 
July 16, 2002, Appellant was charged with two counts of capital murder in 
Montague County, Texas.[1]  On July 19, 2002, 
Appellant was indicted in Cooke County, Texas for the state jail felony offense 
of theft of over $1,500 but less than $20,000.  The 235th 
District Court of Cooke County appointed James Martin to represent Appellant in 
the theft case.  Martin, however, did not represent Appellant in any 
capacity in the Montague County cases.  On August 23, 2002, Appellant 
pleaded guilty to the Cooke County theft offense, and the court sentenced her to 
a one-year term of confinement in state jail.  Prior to being sentenced, 
Appellant signed written admonishments, waivers, and a judicial confession.
        Soon 
thereafter, Appellant’s court-appointed Montague County attorneys, Bruce 
Martin and Michael Curtis, filed a motion for new trial in the Cooke County 
theft case asserting that her plea of guilty was not made knowingly, 
intelligently, and voluntarily and that James Martin had rendered ineffective 
assistance in the plea proceedings.  Appellant attached an affidavit to her 
motion for new trial alleging that, despite James Martin’s knowledge of the 
capital murder charges, “[he] did not advise me against entering a plea of 
guilty,” and “[he] did not advise me of the consequences that entering a 
guilty plea and receiving a felony theft conviction would have in regard to my 
pending Capital Murder case[s].”  Appellant further alleged that if James 
Martin had advised her ”that a plea of guilty and a conviction could be used 
against me in the Capital Murder cases, I would never have entered a plea of 
guilty.”
        James 
Martin also signed an affidavit, which was attached to Appellant’s motion for 
new trial.[2]  He stated that he was 
Appellant’s court-appointed attorney in the Cooke County case and that he knew 
“that she was the nurse accused of Capital Murder in . . . Montague County, 
Texas.”  Martin alleged that he “did not advise her of the consequences 
that entering a guilty plea and receiving a felony theft conviction would have 
in regard to her Capital Murder cases.”  Further, Martin stated that he 
did not advise her against entering a plea of guilty and did not “even think 
about the consequences of such a plea.”  According to Martin’s 
affidavit, “[h]ad [he] given real thought to such consequences, [he] should 
have, and would have, advised her against entering her plea of guilty in this 
case.”
        On 
October 29, 2002, the court conducted a hearing on the motion for new trial.[3]  During the hearing, Appellant subpoenaed two 
witnesses: James Martin and Tim Cole, the District Attorney for the judicial 
district that encompasses Montague County.  While the clerk’s record also 
indicates that the trial court issued a bench warrant to secure Appellant’s 
presence at the October 29 hearing, Appellant did not testify at the hearing.  
Further, Appellant did not introduce either affidavit attached to her motion for 
new trial into evidence.
        Martin 
testified that he knew Appellant was accused of capital murder in Montague 
County.  Martin also testified that he did not advise Appellant of the 
consequences that a guilty plea in the theft case would have on her capital 
murder cases.  Martin stated that the theft charge was a state jail felony 
and carried a maximum of two years’ imprisonment.  He said that the 
State’s plea bargain offer was one year, which is the sentence Appellant 
received.  Martin stated that, in his opinion, “she was probably going to 
be convicted one way or another of the theft charge here prior to the trial in 
the capital murder.”  Martin acknowledged that, among other consequences, 
a felony conviction would prohibit Appellant from filing an application for 
probation or community supervision in the Montague County cases.[4]  In hindsight, Martin testified that if he had 
thought about the consequences of the guilty plea, he would have advised 
Appellant against entering a guilty plea in the theft case.
        On 
cross-examination, the State questioned Martin about the timing of the theft 
indictment and his appointment.  When Martin could not remember the exact 
dates and said he needed to see the records, the State said it “could just 
skip this area” if the court would take judicial notice of “not only the 
specific items mentioned, but the court’s entire file.”  The court 
stated, “All right.  I’ll take judicial notice of my file.”
        The 
State resumed its cross-examination and inquired about the scope of Martin’s 
representation of Appellant and the nature of the theft charges against her.  
Martin testified that he was appointed to represent Appellant only in the theft 
case.  Martin agreed that the evidence in the theft case was “essentially 
overwhelming,” in that she was accused of stealing $5,000 in cash from her 
employer, Wal-Mart, had confessed to the police, and had led the police to the 
money in her home, where it was recovered.  He said that Appellant 
repeatedly instructed him, starting at her arraignment, that she was guilty and 
wanted to enter a guilty plea.
        Martin 
also agreed on cross-examination that any strategy in “chang[ing] this case 
from a guilty plea into a trial would have essentially been for nothing but the 
purpose of delay” because “[b]arring some unforeseen circumstance, 
[Appellant] was going to be convicted.”  On redirect examination, 
however, Martin testified that it probably would have been better “for 
[Appellant] to be able to file the application for probation based on the 
possibility and likelihood of her getting a lesser included instruction on 
murder in the Montague County case[s] than . . . to run one year off her time on 
the state jail felony case.”
        Cole, 
the district attorney in Montague County, testified that Appellant was indicted 
on two counts of capital murder in Montague County in July 2000 before she was 
indicted on the theft offense in Cooke County.  Cole stated that when he 
found out about the guilty plea and the motion for new trial in the theft case, 
he became concerned about how ongoing proceedings in the theft case would affect 
the pending capital murder cases, especially “if some appellate court should 
decide that [Appellant] received ineffective assistance.”
        Consequently, 
Cole made an agreement with Appellant’s Montague County attorneys that he 
would not use Appellant’s final conviction in the capital murder trials.  
For example, Cole stated that Appellant would not be impeached as a convicted 
felon should she decide to testify, and he would have “essentially treat[ed] 
her as a non-convicted person for purposes of that trial.”  Through 
subsequent conversations with the Montague County lawyers, Cole realized that 
Appellant would be unable to file an application for probation in the capital 
murder cases without committing perjury and that the trial court would not be 
bound by the non-use agreement.  Cole stated that, as a result, Appellant 
would not be able to request probation or to voir dire the jury in the capital 
cases on the issue of probation, which could have been at issue if a lesser 
included offense of murder were submitted to the jury and the jury convicted her 
on that charge.
        When 
asked whether he had an opinion concerning James Martin’s representation of 
Appellant in the theft case, Cole said that he hesitated to call another 
attorney ineffective.  Cole then stated, “I believe a reasonable attorney 
probably would not have made that plea at the time that they did it, and I 
certainly would not have.”  Cole later testified that he had never 
practiced as a criminal defense attorney but also stated, “I would never make 
a plea in any case without considering the other charges that have been filed or 
[are] pending against a defendant at the time they make a plea.”
        During 
cross-examination, Cole also testified that he was unaware of “the line of 
cases that says a lawyer doesn’t have to consider anything at all except the 
case that’s before them when they decide to plead somebody to a case.”  
On redirect examination, Cole was asked, “And do you think that the gaining of 
a one-year jail sentence is really collateral to the effects that the guilty 
plea would have in a capital murder case?”  Cole responded, “I don’t 
think in this case that it is collateral.  I think it might be in some 
other situations. . . . I think it’s a very important matter in this case.”
        After 
hearing and considering all of the evidence and testimony presented, the court 
denied Appellant’s motion for new trial.  Subsequently, Appellant sought 
the court’s permission to appeal its ruling denying her motion for new trial, 
and on November 13, 2002, the trial court granted Appellant’s request.  See 
Tex. R. App. P. 25.2(a)(2)(B).
II. Points on Appeal
        On 
appeal, Appellant challenges the denial of her motion for new trial in five 
interrelated points.  Appellant’s general contention on appeal is that 
the trial court abused its discretion in denying her motion for new trial 
because her guilty plea was invalid.  In support of this position, 
Appellant asserts that her plea of guilty was not free, knowing, and voluntary 
because neither the trial court nor her trial counsel informed her of the 
consequences that her guilty plea in the theft case would have on her pending 
capital murder cases.
III. Standard of Review
        We 
review the trial court’s decision to deny Appellant’s motion for new trial 
under an abuse of discretion standard.  Lewis v. State, 911 S.W.2d 
1, 7 (Tex. Crim. App. 1995); Thomas v. State, 31 S.W.3d 422, 428 (Tex. 
App.—Fort Worth 2000, pet. ref’d).  We do not substitute our judgment 
for that of the trial court; rather, we decide whether the trial court’s 
decision was arbitrary or unreasonable. Lewis, 911 S.W.2d at 7.  The 
trial court’s ruling is presumed to be correct, and the burden rests on 
Appellant to establish the contrary.  Lee v. State, 167 Tex. Crim. 
608, 322 S.W.2d 260, 262 (1958); Edwards v. State, 37 S.W.3d 511, 515 
(Tex. App.—Texarkana 2001, pet. ref’d).
IV. Analysis
        In 
her first two points, Appellant asserts that the record indicates that she did 
not knowingly and voluntarily plead guilty because the trial court did not 
admonish her about the consequences that a guilty plea in her theft case would 
have on her pending capital murder cases.[5]  In 
her third, fourth, and fifth points, Appellant complains that if the trial court 
did not have such a duty, her trial counsel did, and that he provided her 
ineffective assistance of counsel by failing to inform her of the consequences 
that her guilty plea would have on her pending capital murder cases, thereby 
rendering her plea involuntary.[6] We will address 
Appellant’s arguments in turn.
        A.     Voluntariness: 
Admonitions under Article 26.13
        The 
law is well settled that a guilty plea must be freely, knowingly, and 
voluntarily made.  Brady v. United States, 397 U.S. 742, 748, 90 S. 
Ct. 1463, 1468-69 (1970); Mitschke v. State, 129 S.W.3d 130, 132 (Tex. 
Crim. App. 2004).  The admonitions required by article 26.13(a) of the code 
of criminal procedure apply in guilty pleas for felony offenses and may be made 
orally or in writing.  Tex. Code 
Crim. Proc. Ann. art. 26.13 (Vernon 1989 & Supp. 2004); State v. 
Jiminez, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999).  When the record 
reflects that a defendant was properly admonished, it presents a prima facie 
showing that the guilty plea was knowing and voluntary.  Martinez v. 
State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); Ribelin v. State, 
1 S.W.3d 882, 884 (Tex. App.—Fort Worth 1999, pet. ref’d).  The burden 
then shifts to the defendant to establish that, notwithstanding the statutory 
admonishments, he or she did not understand the consequences of the plea.  Martinez, 
981 S.W.2d at 197; Ribelin, 1 S.W.3d at 884.
        Here, 
the clerk’s record contains Appellant’s signed “felony-plea of guilty, . . 
. waiver, stipulation of evidence and judicial confession,” in which she was 
admonished in conformity with article 26.13(a).  See Tex. Code Crim. Proc. Ann. art. 
26.13(a).  Appellant’s attorney, the State’s attorney, and the trial 
court all reviewed and signed the document.  At the plea hearing, Appellant 
stated that her trial counsel had fully explained the instrument containing her 
written plea of guilty, waiver of rights, and judicial confession, and she 
further acknowledged that she was satisfied with trial counsel’s 
representation.  Appellant informed the court that she understood all of 
the instrument’s contents before she signed it, and she stated that she knew 
the range of punishment and needed no further explanation from the trial court.  
To the extent that Appellant’s points challenge noncompliance with article 
26.13(a), we conclude they are without merit.  See Hernandez v. State, 
986 S.W.2d 817, 821 (Tex. App.—Austin 1999, pet. ref’d).
B. 
Voluntariness: Non-Capital Guilty Plea’s Effect on the Pending Capital Murder 
Cases
        The 
crux of Appellant’s appeal is her argument that the trial court and her trial 
counsel should have informed her of the consequences that her guilty plea in the 
theft case would have on her pending capital murder cases and that their failure 
to so inform her rendered her guilty plea invalid.  The State responds that 
because the consequences from Appellant’s guilty plea to the theft charge on 
her pending capital murder cases were collateral, neither the trial court nor 
Appellant’s trial counsel was required to advise Appellant of those 
consequences.
        “[A] 
guilty plea must be made with a clear understanding of direct consequences of 
the plea.”  Mitschke, 129 S.W.3d at 132 (citing Brady, 397 
U.S. at 748, 90 S. Ct. at 1468-69).  Further, a guilty plea is generally 
“considered voluntary if the defendant was made fully aware of the direct 
consequences.”  Jiminez, 987 S.W.3d at 888. On the other hand, 
ignorance of a collateral consequence does not render the plea 
involuntary.  Id.; Ex parte Morrow, 952 S.W.2d 530, 536 (Tex. 
Crim. App. 1997), cert. denied, 525 U.S. 810 (1998).  As one federal 
appeals court has stated, “[t]he distinction between a collateral and a direct 
consequence of a criminal conviction, like many of the lines drawn in legal 
analysis, is obvious at the extremes and often subtle at the margin.”  United 
States v. Russell, 686 F.2d 35, 38 (D.C. Cir. 1982); see generally Morrow, 
952 S.W.2d at 536 (providing list of consequences courts have deemed 
collateral); 5 Wayne R. LaFave, Jerold H. 
Israel, & Nancy J. King, Criminal 
Procedure § 21.4(d), at 171-72 (2d ed. 1999) (listing consequences that 
courts have determined to be direct or collateral).  In this case, 
we—like courts in Texas and across the United States—must delineate between 
direct and collateral consequences and determine which category applies to the 
facts of this case.  See Mitschke, 129 S.W.3d at 133-35; Jiminez, 
987 S.W.2d at 888-89 & nn.5-6; Morrow, 952 S.W.2d at 536; see 
generally LaFave, supra, 
§ 21.4(d); Gabriel J. Chin & Richard W. Holmes, Jr., Effective 
Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L. Rev. 697, 706-08 (2002) 
(listing the numerous jurisdictions that apply the “collateral consequences 
rule”).
        In 
Morrow, the appellant was charged with capital murder, aggravated 
robbery, and two attempted capital murders.  952 S.W.2d at 533.  The 
capital murder charge was disposed of first, with Morrow being found guilty and 
sentenced to death by a jury.  Id.  While that conviction was 
on appeal, Morrow pleaded guilty to the three remaining charges.  Id.  
Four and one-half years later, Morrows’s capital murder conviction was 
reversed by the court of criminal appeals, and he was eventually retried.  Id.  
(citing Morrow v. State, 753 S.W.2d 372, 377 (Tex. Crim. App. 
1988)).  During the second capital murder trial, the State offered into 
evidence his three guilty pleas, judicial confessions, and sentences.  Id.
        Morrow 
filed a post-conviction application for writ of habeas corpus, challenging the 
voluntariness of his three guilty pleas on the basis that trial counsel rendered 
ineffective assistance by not advising him “prior to the entry of his guilty 
pleas, that such pleas could be used [against him] at a potential capital murder 
retrial.”  Id. at 535.  The court of criminal appeals 
analyzed whether such a consequence was direct or collateral, stating that 
“[a] consequence is ‘collateral’ if it is not a definite, practical 
consequence of a defendant’s guilty plea.”  Id. (citing Cuthrell 
v. Dir., Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir.), cert. 
denied, 414 U.S. 1005 (1973)).[7] Ultimately, the 
court rejected Morrow’s ineffective assistance claim on the rationale that 
Morrow’s “counsel was under no duty to inform [him] of the various ways his 
three guilty pleas could be used against him at a possible capital murder 
[re]trial because such use is ‘collateral.’”  Id. at 536 
(citing Cuthrell, 475 F.2d at 1366) (emphasis supplied).
        Two 
years after the Morrow decision, the Jiminez court addressed the 
question of “whether there is a constitutional right to be admonished of the 
immigration consequences of a misdemeanor guilty plea, and whether such a plea 
is rendered involuntary by the lack of admonishments about possible immigration 
consequences when the defendant is not a citizen of the United States.”  
987 S.W.2d at 888.  The court held that such an admonition is not 
constitutionally required because “deportation is generally considered a 
collateral consequence” of a guilty plea and the Texas legislature has 
“chose[n] not to require admonishments for persons charged with 
misdemeanors.”  Id. at 888-89; see Tex. Code Crim. Proc. Ann. art. 
26.13(a)(4) (requiring admonition that a guilty plea might result in deportation 
to a defendant pleading guilty to a felony offense); see generally LaFave, supra, § 21.4(d), at 172 
(noting majority view that deportation is a collateral consequence); cf. 
Hwang v. State, 130 S.W.3d 496, 500-01 (Tex. App.—Dallas 2004, no pet.) 
(holding defendant was harmed by the trial court’s failure to admonish him on 
the deportation consequences of his guilty plea where the record did not contain 
either written or oral admonishments concerning such consequences).
        In 
reaching this conclusion, the Jiminez court differentiated between direct 
and collateral consequences without citing Cuthrell.  Id. at 
888-89.  Instead, the court defined each as follows: “A consequence . . . 
[is] ‘direct’ where it is ‘definite, immediate and largely 
automatic.’” Id. at 888 n.5 (citations omitted); “A consequence . . 
. [is] ‘collateral’ where ‘it lies within the discretion of the court 
whether to impose it,’ or where ‘its imposition is controlled by an agency 
which operates beyond the direct authority of the trial judge.’”  Id. 
at 889 n.6 (citations omitted).
        More 
recently, the court of criminal appeals addressed whether an appellant’s 
guilty plea was involuntary because the trial court had not admonished him as to 
Texas’s sex-offender registration requirements—admonishments which, at the 
time of his guilty plea, were not statutorily required to be given.  Mitschke, 
129 S.W.3d at 132-33 (stating that article 26.13(a)(5) became effective in 
1999); see Tex. Code Crim. Proc. 
Ann. art. 62 (Vernon Supp. 2004) (governing Texas’s sex-offender 
registration program); see generally LaFave, supra, § 21.4(d), at 
172-73 (recognizing split of authority regarding whether a sex-offender 
registration requirement is a direct or collateral consequence).
        In 
Mitschke, the court called into question Texas courts’ reliance on Cuthrell—upon 
which Appellant relies in her brief—and recast Morrow’s standard for 
direct and collateral consequences.  129 S.W.3d at 135.[8] 
 Mitschke first held, “[I]f the consequence is definite and 
largely or completely automatic, then it is a direct consequence.  This 
standard is close to the standard set out in Morrow; a direct consequence 
is one that is ‘a definite, practical consequence of a defendant’s 
plea.’”  Id. (quoting Morrow, 952 S.W.2d at 535).  
Further, Mitschke held that “[e]ven if the consequence is direct, . . . 
imposition of it without admonishment might still be justified as remedial and 
civil rather than punitive.” Id. (citations omitted).  “A trial 
court is not required to admonish a defendant about every possible consequence 
of his plea, direct or collateral, only about those direct consequences that are 
punitive in nature or specifically enunciated in the law.”  Id. at 
136.
        Applying 
this analysis to the sex-offender registration consequence, the court explained 
that such a consequence was “definite, . . . completely automatic, . . . [and] 
‘practical’ in the sense that it is logically connected to the 
plea.”  Id. at 135.  The court concluded that “although the 
sex-offender registration requirement is a direct consequence of appellant’s 
plea, it is a non-punitive measure, and failure to admonish does not necessarily 
render a plea involuntary”; thus, the failure to admonish Mitschke “did not 
violate due process or render his plea involuntary.”  Id. at 136.
        Other 
than dicta in Morrow, 952 S.W.2d at 535 n.6, we have not found a Texas 
case addressing the specific consequences at issue in this case, those being the 
consequences of a guilty plea in a non-capital case on a pending capital case, 
in which the criminally accused has been indicted, but not yet tried.  
Professors LaFave, Israel, and King cite numerous cases for the proposition that 
a “defendant need not be warned . . . [of] the possible evidentiary use of 
[his or her] plea in later proceedings,” and they state that “clearly the 
defendant need not be warned that if he does not mend his ways, his prior 
criminal conduct and later actions could add up to a serious offense.”  LaFave, supra, § 21.4(d), at 
171.  Undoubtedly, this rationale underpins Morrow, in which the 
court rejected Morrow’s ineffective assistance claim because he “ha[d] not 
proven . . . that counsel’s alleged failure to advise him, ad infinitum, 
of the various ways such guilty pleas could be used against him at a 
hypothetical retrial, was ‘outside the wide range of competence demanded of 
attorneys in criminal cases.’”  952 S.W.2d at 536-37 (citation 
omitted).  Of course, in this case, that Appellant will be tried on 
multiple counts of capital murder is not speculative or hypothetical, in light 
of Cole’s testimony and his efforts to protect any future convictions in the 
Montague County cases.
        We 
recognize that in the foregoing discussion of collateral consequences, Mitschke 
and Jiminez both concern judicial admonishment, while Morrow 
primarily involves an ineffective assistance of counsel claim.  Mitschke, 
129 S.W.3d at 135-36; Jiminez, 987 S.W.2d at 888; Morrow, 952 
S.W.2d at 536.  Here, Appellant raises both types of claims, but our 
analysis differs as to each.

1. Admonitions Regarding the Consequences of the 
Guilty Plea

        We 
agree with Professors LaFave, Israel, and King that regardless of our 
characterization of the consequences at issue as being either “direct” or 
“collateral,” “it is simply impracticable for a trial judge to advise the 
defendant of all possible consequences, especially because often the judge will 
not be aware at the time of the plea of the special circumstances which would 
make some of those consequences possible.”  LaFave, supra, § 21.4(d), at 
173.  Upon our review of the record, it is not evident that the Cooke 
County trial court knew of the pending capital murder cases in Montague County 
at the time of Appellant’s plea proceedings.  While the clerk’s record 
contains a bench warrant issued to the sheriff of Montague County for 
Appellant’s release on the date of the plea proceedings, nothing in the record 
suggests that the Cooke County court had knowledge of the nature or 
circumstances of the charges pending in Montague County.
        We 
will not impose a duty on a trial court to admonish a defendant about the 
consequences a guilty plea could have on possible later proceedings when the 
trial court has no knowledge of the nature of the charges, the likelihood of 
trial or dismissal, or any other pertinent circumstances surrounding the other 
charges.[9]  See, e.g., King, 17 F.3d at 
154-55 (holding trial court in one county need not tell defendant that 
instant conviction could be aggravating circumstances in a later case from 
another county, where trial court did not know of the State’s intended use of 
the guilty plea, even if the later case concerns a capital offense under 
investigation at the time of the plea).  We therefore reject Appellant’s 
claim that her plea was invalid because the Cooke County trial court did not 
admonish her on the consequences her guilty plea would have on the Montague 
County cases.  Accordingly, we overrule Appellant’s first and second 
points.

2. Ineffective Assistance Regarding the Consequences 
of the Guilty Plea
 
        We 
now turn to Appellant’s argument that her guilty plea was invalid due to her 
trial counsel’s ineffective assistance in failing to advise her of the 
consequences that a guilty plea in her felony theft case would have on her 
pending capital murder cases—cases of which trial counsel was aware.  A 
defendant is entitled to effective assistance of counsel during the plea bargain 
process.  Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 
370-71 (1985); Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 
2052, 2069 (1984); Randle v. State, 847 S.W.2d 576, 580 (Tex. Crim. App. 
1993).
        To 
successfully challenge the voluntariness of a guilty plea based on ineffective 
assistance of counsel, we must determine “(1) whether counsel’s advice was 
within the range of competence demanded of attorneys in criminal cases and if 
not, (2) whether there is a reasonable probability that, but for counsel’s 
errors, [s]he would not have pleaded guilty and would have insisted on going to 
trial.” Morrow, 952 S.W.2d at 536 (citing Hill, 474 U.S. at 56, 
106 S. Ct. at 369 and Strickland, 466 U.S. at 697, 104 S. Ct. at 2069); see 
also Ex parte Moody, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).  The 
precise question posed in this case is whether Appellant met her burden to prove 
by a preponderance of the evidence that (1) counsel’s failure to inform her of 
the potential uses and consequences of her guilty plea in her pending capital 
murder cases was outside the range of competence demanded of attorneys in 
criminal cases; and (2) but for defense counsel’s errors, she would not have 
pleaded guilty and would have insisted on going to trial.  Morrow, 
952 S.W.2d at 536 (citing Hill, 474 U.S. at 56, 106 S. Ct. at 369).
                         a. Counsel’s Performance
        With 
respect to Hill’s first prong, “defense counsel should be expected to 
discuss with [his or her] client the range of risks attendant [his or her] 
plea.”  LaFave, supra, 
§ 21.4(d), at 173; see also Chin, supra, at 731 (noting that 
“it is the responsibility of defense counsel to inform a defendant of the 
advantages and disadvantages of a plea agreement and the attendant statutory and 
constitutional rights that a guilty plea would forgo”).  “A defense 
attorney’s representation is quite unlikely to be constitutionally 
insufficient because of counsel’s failure to anticipate and advise the 
defendant regarding ‘collateral’ aspects of the prosecution and a conviction 
on a plea.”  42 George E. Dix 
& Robert O. Dawson, Texas 
Practice: Criminal Practice & Procedure § 24.101, at 282-83 (2d ed. 
2001) (analyzing Morrow); see also Hill, 474 U.S. at 56, 
106 S. Ct. at 369.
        Morrow, 
however, declined to decide the broader question of “whether a lawyer, when 
representing a client charged with both capital and non-capital cases, has a 
duty to explain the effect of guilty pleas in the non-capital cases on the 
capital case?”  952 S.W.2d at 535 n.6.  This is the exact question 
that presents itself in this case.  The court of criminal appeals observed 
that, in a case where a defendant’s capital case was pending at the time the 
defendant pleaded guilty in a non-capital case, “it is arguable that 
counsel would have had a duty to inform [the defendant] of the State’s 
possible use of [his or her] guilty plea[] and judicial confession[].”  Id.
        Here, 
the clerk’s record indicates that, prior to the Cooke County plea proceedings, 
Appellant’s trial counsel visited with her in the Montague County jail.  
Appellant’s counsel testified at the hearing on her motion for new trial that 
he knew, before and at the time of her guilty plea, about her pending capital 
murder cases, and he further stated that he knew she would be prevented from 
filing an application for community supervision in the capital murder trial(s) 
because of her guilty plea.  See Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 4(e).  Appellant’s trial counsel testified that, even though he was 
fully aware of the pending capital murder cases in Montague County, he did not 
advise Appellant of the consequences that a guilty plea in the Cooke County case 
would have on the pending capital cases in Montague County.  Appellant’s 
trial counsel testified that he should have considered such consequences and 
advised against a guilty plea.
        Cole, 
the State’s attorney in Montague County, likewise testified that ”a 
reasonable attorney probably would not have made that plea at the time that they 
did it.”  Cole acknowledged some of the other potential uses of 
Appellant’s guilty plea when he testified about the non-use agreement he had 
made with Appellant’s Montague County attorneys.  Moreover, Cole agreed 
that, despite the non-use agreement, Appellant would still be prohibited from 
filing an application for community supervision, and he stated that he was 
unsure as to whether the non-use agreement “would absolutely prevent the 
[Montague County court] from allowing her to . . . be treated as a non-convicted 
person.”
        Following 
Mitschke, we agree with Morrow’s observation that Appellant’s 
trial counsel had a duty to inform Appellant of the consequences that her guilty 
plea in her non-capital felony case would have on her pending capital murder 
cases because such consequences were direct and punitive.  See Mitschke, 
129 S.W.3d at 135-36; Morrow, 952 S.W.2d at 535 n.6.  The 
consequence of Appellant’s not being able to file the application for 
community supervision in her pending capital murder cases because of her guilty 
plea in the theft case is definite and completely automatic.  See 
Mitschke, 129 S.W.3d at 135.  A defendant cannot file an application 
for community supervision if he or she has previously been convicted of a felony 
in this or any other state.  See Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 4(e).  To borrow from Mitschke, “there are not exceptions, no 
wiggle room, no conditions which relieve”  Appellant of that 
prohibition.  129 S.W.3d at 135.  The consequence is also 
“practical” because it is logically connected to her plea and the resulting 
conviction.  See id.  Finally, this direct consequence is not 
among those that could be characterized as remedial.  See id. 
(stating that sex-offender registration requirements, loss of voting rights, 
inability to possess firearms, ineligibility for certain professional licenses, 
etc. are non-punitive consequences).  Focusing solely on the application 
for community supervision, without even considering the potential evidentiary 
uses of Appellant’s guilty plea, we conclude that Appellant’s inability to 
file an application for community supervision in her capital murder cases is a 
direct and punitive consequence of her guilty plea.  See id. at 136.
        Accordingly, 
on the factual record before us, we hold that Appellant’s trial counsel, who 
had knowledge of Appellant’s pending capital murder cases in Montague County, 
performed outside the range of competence demanded of attorneys in criminal 
cases by failing to inform Appellant of the consequences of her guilty plea on 
her pending capital murder cases.  See Hill, 474 U.S. at 56, 106 S. 
Ct. at 369; Morrow, 952 S.W.2d at 536.
                         b. Prejudice
        Having 
held that Appellant met her burden on the first Hill prong, we now 
address whether Appellant established prejudice under Hill.  See 
Hill, 474 U.S. at 56, 106 S. Ct. at 369; Moody, 991 S.W.2d at 858; Morrow, 
952 S.W.2d at 536.  In other words, Appellant had the burden to develop 
facts and details necessary to show that but for counsel’s failure to advise 
her of the consequences her guilty plea would have on her pending capital cases, 
she would not have pleaded guilty and would have insisted on going to 
trial.  See Hill, 474 U.S. at 56, 106 S. Ct. at 369; Moody, 
991 S.W.2d at 858; Brink v. State, 78 S.W.3d 478, 488 (Tex. 
App.—Houston [14th Dist.] 2001, pet. ref’d).  In determining 
whether Appellant met her burden, we are to consider the circumstances 
surrounding her guilty plea and the gravity of the advice that Appellant did not 
receive as it pertained to Appellant’s plea determination.  See Moody, 
991 S.W.2d at 858; Mitich v. State, 47 S.W.3d 137, 141 (Tex. 
App.—Corpus Christi 2001, no pet.).
        As 
we mentioned above, Appellant did not testify at the hearing on her motion for 
new trial.  To meet her burden on the second Hill prong, Appellant 
directs us to her affidavit, in which she swore that if James Martin had advised 
her ”that a plea of guilty and a conviction could be used against me in the 
Capital Murder cases, I would never have entered a plea of guilty.”  
While Appellant did not introduce her affidavit into evidence, she argues on 
appeal that because the trial court took judicial notice of its file, we may 
consider the substance of her affidavit as evidence of prejudice under Hill.  
We disagree.
        A 
motion for new trial is not self-proving.  Lamb v. State, 680 S.W.2d 
11, 13 (Tex. Crim. App. 1984), cert. denied, 470 U.S. 1009 (1985); Lincicome 
v. State, 3 S.W.3d 644, 646 (Tex. App.—Amarillo 1999, no pet.).  
During a hearing on a motion for new trial, a trial court may receive evidence 
by affidavits.  Tex. R. App. P. 
21.7; Godoy v. State, 122 S.W.3d 315, 319 (Tex. App.—Houston [1st 
Dist.] 2003, pet. ref’d).  An affidavit attached to the motion, however, 
is merely “a pleading that authorizes the introduction of supporting 
evidence” and is not evidence itself.  Stephenson v. State, 494 
S.W.2d 900, 909-10 (Tex. Crim. App. 1973); see McIntire v. State, 698 
S.W.2d 652, 658 (Tex. Crim. App. 1985); Walker v. State, 440 S.W.2d 653, 
659 (Tex. Crim. App. 1969); Portillo v. State, 117 S.W.3d 924, 930 (Tex. 
App.—Houston [14th Dist.] 2003, no pet.); Martins v. State, 
52 S.W.3d 459, 468 (Tex. App.—Corpus Christi 2001, no pet.); Lincicome, 
3 S.W.3d at 646; White v. State, 657 S.W.2d 877, 879 (Tex. App.—Fort 
Worth 1983, no pet.).  To constitute evidence, the affidavit must be 
introduced as evidence at the hearing on the motion.  Stephenson, 
494 S.W.2d at 909-10; Portillo, 117 S.W.3d at 930; Lincicome, 3 
S.W.3d at 646; White, 657 S.W.2d at 879; cf. McDougal v. State, 
105 S.W.3d 119, 120-21 (Tex. App.—Fort Worth 2003, pet. ref’d) (overruling 
sufficiency of evidence point regarding guilty plea where there was no record 
from the hearing showing whether appellant’s confession was introduced into 
evidence or judicially noticed).
        In 
White, we held that an affidavit attached to the appellant’s motion for 
new trial concerning juror misconduct did not constitute evidence, even though 
the trial court had taken judicial notice of all papers on file, because the 
affidavit was not introduced as evidence at the hearing on the motion for new 
trial.  657 S.W.2d at 879 (citing Stephenson, 494 S.W.2d at 909-10, 
and Boone v. State, 629 S.W.2d 786, 789-90 (Tex. App.—Houston [14th 
Dist.] 1981, no pet.)).  A court may take judicial notice of its own 
records, but such is not without limit.  See Tex. R. Evid. 201; Turner v. State, 
733 S.W.2d 218, 221-22 (Tex. Crim. App. 1987).  “A judicially noticed 
fact must be one not subject to reasonable dispute in that it is either (1) 
generally known within the territorial jurisdiction of the trial court or (2) 
capable of accurate and ready determination by resort to sources whose accuracy 
cannot reasonably be questioned.”  Tex. 
R. Evid. 201(b).  In a case such as this one, in which an appellant 
is raising allegations of ineffective assistance of counsel via affidavit, while 
a court may judicially notice the existence of the affidavit in its file, the 
court may not take judicial notice of the truth of the factual contents 
contained in such an affidavit because those facts are not the kinds of facts 
that a court may judicially notice.  See id.; see also Tex. 
Dep’t of Public Safety v. Claudio, No. 13-01-014-CV, 2002 WL 31835518, at 
*2 (Tex. App.—Corpus Christi Dec. 19, 2002, no pet.) (op. on reh’g) (not 
designated for publication)[10] (holding in a civil 
case that, under rule 201, a court’s “taking notice of the contents of the 
file does not elevate [averments in appellant’s pleadings] into proof”); Tschirhart 
v. Tschirhart, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no pet.) 
(stating in a civil case that, under rule 201, “a court may take judicial 
notice that a pleading has been filed in the cause,” but it “may not . . . 
take judicial notice of the truth of allegations in its records”).
        Because 
Appellant did not offer her affidavit during the hearing on the motion for new 
trial, it is not evidence.  See Stephenson, 494 S.W.2d at 
909-10; Portillo, 117 S.W.3d at 930; Lincicome, 3 S.W.3d at 646; White, 
657 S.W.2d at 879; cf. Bahlo v. State, 707 S.W.2d 249, 251-52 (Tex. 
App.—Houston [1st Dist.] 1986, no pet.) (finding, on specific facts 
of case, that affidavit constituted evidence where parties and trial court had 
treated affidavit as evidence during motion for new trial hearing).  
Accordingly, we hold that Appellant has failed to show prejudice under Hill 
because she did not offer any evidence that there existed a reasonable 
probability that, but for her trial counsel’s failure to advise her of the 
consequences her guilty plea would have on her pending capital cases, she would 
not have pleaded guilty and would have insisted on going to trial.[11]  See Hill, 474 U.S. at 56, 106 S. Ct. at 
369; Moody, 991 S.W.2d at 858; Morrow, 952 S.W.2d at 536.
        We 
therefore conclude that the trial court did not abuse its discretion in denying 
Appellant’s motion for new trial.  See Lewis, 911 S.W.2d at 7; Thomas, 
31 S.W.3d at 422.  We overrule Appellant’s third, fourth, and fifth 
points.
V. Conclusion
        Having 
overruled all five of Appellant’s points, we affirm the trial court’s 
judgment.
 
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
 
PANEL A:   CAYCE, 
C.J.; HOLMAN and GARDNER, JJ.
 
PUBLISH
 
DELIVERED: June 3, 2004

 
NOTES
1.  
Each indictment alleged that Appellant had intentionally or knowingly caused the 
deaths of two persons.
2.  
While the State did not object or otherwise complain about Martin’s affidavit, 
we note that it lacks the stamp and signature of a notary public.  See 
Tex. Gov’t Code Ann. § 
312.011(1) (Vernon 2002) (defining affidavit as “a statement in writing of a 
fact or facts signed by the party making it, sworn to before an officer 
authorized to administer oaths, and officially certified to by the officer under 
his seal of office”); Venable v. State, 113 S.W.3d 797, 800-01 (Tex. 
App.—Beaumont 2003, no pet.) (stating that “[t]he absence of the notarial 
seal renders an affidavit defective”).
3.  
Appellant’s Montague County attorneys have provided her defense both at the 
hearing on motion for new trial and in this appeal.
4.  
The code of criminal procedure provides:
 
A 
defendant is eligible for community supervision under this section only if 
before the trial begins the defendant files a written sworn motion with the 
judge that the defendant has not previously been convicted of a felony in this 
or any other state, and the jury enters in the verdict a finding that the 
information in the defendant’s motion is true.

Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 4(e) (Vernon Supp. 2004).
5.  
Point One: “The evidence in support of Appellant’s conviction was legally 
and factually insufficient where it was shown that Appellant’s plea of guilty 
was not made knowingly, intelligently, and voluntarily.”
        Point 
Two: “The Trial Court abused its discretion in denying Appellant’s Motion 
for New Trial where the evidence showed that Appellant’s plea of guilty was 
not made knowingly, intelligently, and voluntarily.”
6.    
Point Three: “Appellant’s plea of guilty was not made voluntarily where the 
evidence showed that [the] plea was the product of ineffective assistance of 
counsel and Appellant was not made aware of the consequences such a plea of 
guilty would have in her pending capital murder trials.”
        Point 
Four: “The Trial Court abused its discretion in denying Appellant’s Motion 
for New Trial where the evidence showed that Appellant received ineffective 
assistance of counsel when she was not advised of the consequences her plea of 
guilty to [the] felony theft offense would have in her pending trial for capital 
murder.”
        Point 
Five: “The Appellant received ineffective assistance of counsel in violation 
of the United States Constitution, Amendments Six and Fourteen, and and Article 
1, Section 10, Texas Constitution, where she was not advised of the consequences 
her plea of guilty to [the] felony theft offense would have in her pending trial 
for capital murder.”
7.  
Cuthrell provides, “The distinction between ‘direct’ and 
‘collateral’ consequences of a plea, while sometimes shaded in the relevant 
decisions, turns on whether the result represents a definite, immediate and 
largely automatic effect on the range of the defendant’s punishment.”  
475 F.2d at 1366.
8.  
Mitschke also disregards a portion of the analysis from Ruffin v. 
State, 3 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 1999, 
pet. ref’d)—another case that Appellant cites in her brief—because the Ruffin 
court, relying on Cuthrell, “confounds the duty to register [as a 
sex-offender] with the possible consequences for failure to register.”  Mitschke, 
129 S.W.3d at 134.
9.  
We decline to address whether the outcome would be the same if the trial court 
had knowledge of the circumstances concerning the pending capital murder cases 
at the time of the plea proceedings because those facts are not present in this 
case.  Cf. King v. Dutton, 17 F.3d 151, 155 (6th Cir.) 
(refusing to impose “an affirmative duty on state sentencing judges to inform 
criminal defendants of the possible use of their convictions in pending 
cases,” even if the judges know of the nature of the pending cases), cert. 
denied, 512 U.S. 1222 (1994).
10.  
See Tex. R. App. P. 47.7 
(providing that unpublished cases may be cited, although they have no 
precedential value).
11.  
Even if we were to consider the contents of Appellant’s affidavit as 
substantive evidence supporting prejudice under Hill—which we do 
not—Appellant offered no other evidence that she would have not have pleaded 
guilty and would have insisted on going to trial.  See, e.g., United 
States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) (holding 
that defendant failed to meet Strickland prejudice prong with her “bare 
allegation” that “she would not have pleaded guilty if her trial counsel had 
advised her of the deportation consequences of the plea”).  For example, 
despite her apparent availability, Appellant did not testify at the hearing on 
the motion for new trial.  Further, she offered no evidence of when or if 
the capital cases had been set for trial or when the theft case would have gone 
to trial.