

## NUMBER 13-05-531-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

FRANCISCO VASQUEZ,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

### On appeal from the 398th District Court
### of Hidalgo County, Texas

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Rodriguez**

A jury convicted appellant, Francisco Vasquez, of murder, and assessed punishment at ninety-nine years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003).

By nine issues, which have been regrouped and renumbered herein,[1] Vasquez contends (1) he was deprived of his right to file a motion for new trial, (2) the trial court erred in declining to submit the option of community supervision to the jury, (3) the trial court erred in not providing a limiting instruction, (4) the trial court erred in allowing evidence of an extraneous offense, (5) the trial court erred in allowing hearsay and irrelevant evidence, (6) the trial judge lacked impartiality, (7) the State made improper jury argument, (8) the prosecutor engaged in misconduct, and (9) the evidence was legally and factually insufficient to support the jury's verdict. We affirm.

## I. Background

On October 13, 2004, a grand jury indicted Vasquez for the murder of Eduardo Cantu. Vasquez pleaded not guilty, and the case proceeded to jury trial. Vasquez's wife, Minerva Benitez Vasquez, invoked her spousal privilege and did not testify during the guilt phase of the trial. The jury returned a guilty verdict. Vasquez testified at the sentencing hearing. On June 20, 2005, the trial court orally sentenced Vasquez to ninety-nine years in prison. The judgment was signed on June 27, 2005.

On July 7, 2005, Vasquez's trial counsel filed a notice of appeal. He also filed a motion to withdraw and to appoint appellate counsel. The trial court granted the motion to withdraw and appointed appellate counsel on July 22, 2005. Appellate counsel filed an untimely request for extension of time and motion for new trial on July 27, 2005. See TEX. R. APP. P. 21.4(a) ("The defendant may file a motion for new trial

_____

[1] Although Vasquez presents forty-nine numbered issues for review, he has grouped them as eleven issues.

2

before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court.").

## II. Motion for New Trial

By his first issue, Vasquez argues that he was deprived of representation of counsel during the thirty days following sentencing, causing him to file an untimely motion for new trial.[2] *See id.* In the alternative, Vasquez contends that his trial counsel was ineffective by not filing a motion for new trial.

In *Benson v. State,* the Houston court of appeals stated:

> [T]rial counsel, retained or appointed, has the duty, obligation, and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, and the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal.

224 S.W.3d 485, 491 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (en banc) (quoting *Ex parte Axel*, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988) (en banc)). Unless the record shows that trial counsel withdrew or was replaced by new counsel after sentencing, there is a rebuttable presumption that trial counsel continued to represent the accused effectively during the thirty days the accused had to file a motion for new trial. *Jones v. State*, 39 S.W.3d 691, 693 (Tex. App.–Corpus Christi 2001, no pet.).

---

[2] Vasquez also asks this Court to abate the appeal and remand the case to the trial court so that he can file a timely motion for new trial. Vasquez relies on *Jack v. State*, 64 S.W.3d 694, 697 (Tex. App.–Houston [1st Dist.] 2002, pet. dism'd), for the proposition that an appellate court may abate and remand this case "to recommence the time period for filing a motion for new trial." However, in *Benson v. State*, the Houston court of appeals abrogated the precedential value of *Jack*, because "the Court of Criminal Appeals criticized the abatement procedure employed" by the Houston court of appeals and disapproved of the procedure as not comporting "with the Court of Criminal Appeals' decisions in the area." *Benson v. State*, 224 S.W.3d 485, 496 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (en banc). Thus, *Jack* provides no guidance for this proposition, and we are not persuaded by this argument.

In this case, Vasquez was represented by counsel during the thirty days he had to file a motion for new trial. The record shows that Vasquez was sentenced on June 20, 2005, and that the trial court granted trial counsel's motion to withdraw on July 22, 2005, after the deadline to file a motion for new trial had passed. Thus, trial counsel neither withdrew nor was replaced by counsel during the thirty days Vasquez had to file a motion for new trial. We must presume, therefore, that trial counsel effectively represented Vasquez unless the evidence in the record shows otherwise. *See id.*

Vasquez claims that he overcame this presumption by attaching affidavits of his trial counsel and appellate counsel to his untimely motion for new trial. We disagree. Affidavits are not evidence unless they are introduced as such to the trial court. *Stephenson v. State*, 494 S.W.2d 900, 909 (Tex. Crim. App. 1973); *Jackson v. State*, 139 S.W.3d 7, 20 (Tex. App.–Fort Worth 2004, pet. ref'd); *Lincicome v. State*, 3 S.W.3d 644, 646 (Tex. App.–Amarillo 1999, no pet.). Here, Vasquez did not offer the affidavits to the trial court; therefore, they do not constitute evidence. *See Stephenson*, 494 S.W.2d at 909; *Jackson*, 139 S.W.3d at 20; *Lincicome*, 3 S.W.3d at 646. Also, the fact that Vasquez's trial counsel filed a notice of appeal is evidence that Vasquez was informed of at least some appellate rights. *See Jones*, 39 S.W.3d at 693. Moreover, there is no evidence to show that counsel had abandoned Vasquez or did not counsel him about his right to file a motion for new trial. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("Direct appeal is usually an inadequate vehicle for raising [ineffective assistance of counsel] because the record is generally undeveloped."); *Guzman v. State*, 923 S.W.2d 792, 797 (Tex. App.–Corpus Christi 1996, no pet.) ("An allegation of ineffective counsel will be sustained only if it is firmly founded and the record affirmatively demonstrates counsel's alleged

ineffectiveness.").[3]   We conclude Vasquez has not presented evidence rebutting the presumption that trial counsel continued to represent him effectively during the thirty days he had to file a motion for new trial.  *See Jones*, 39 S.W.3d at 693 (determining that the presumption will not be rebutted when there is nothing in the record to suggest otherwise).[4]  We overrule Vasquez's first issue.

## III.  Probation Eligibility

In a second issue, Vasquez contends that the trial court erred by not allowing the jury to decide whether he was eligible for community supervision.  "A defendant is eligible for [jury recommended] community supervision . . . only if before trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state . . . ."  TEX. CODE CRIM. PROC. ANN. art. 42.12 § 4(e) (Vernon Supp. 2007); *see id.* at art. 42.12 § 4(d)(3) ("A defendant is not eligible for community supervision under this section if the defendant does not file a sworn motion under Subsection (e).").

The record shows that a pre-trial motion for community supervision was filed.  However, the motion was not sworn to by Vasquez.  *See id.* at art. 42.12, § 4(e).  Therefore, Vasquez did not comply with article 42.12.  Furthermore, at sentencing, Vasquez offered no objections to the jury charge.  *See* TEX. R. APP. P. 33.1 (requiring a

---

[3] Throughout his brief, Vasquez suggests that his counsel was ineffective.  However, in order to prevail on an ineffective assistance of counsel claim, he must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Vasquez has not provided such evidence.  *See Guzman v. State*, 923 S.W.2d 792, 797 (Tex. App.–Corpus Christi 1996, no pet.).  We, therefore, cannot sustain Vasquez's claim of ineffective assistance of counsel.  *See id.*

[4] Vasquez may, however, develop a record to support his ineffectiveness claim by means of a habeas corpus proceeding.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2007).

timely objection in order to preserve error).  Finally, even if Vasquez had complied with 42.12 and properly preserved error, we conclude that Vasquez was not harmed because he testified that he had been previously convicted of the felony offense of aggravated sexual assault of a child, thus making him ineligible for community supervision.  *See McDowell v. State*, 235 S.W.3d 294, 298 (Tex. App.–Texarkana 2007, no pet.) (finding that the trial court did not err in denying defendant's motion for community supervision even though the defendant filed a sworn motion because the evidence at trial showed that she had been convicted of a prior felony); *see also* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (e) (Vernon Supp. 2007).  Also, in this case, the jury assessed punishment at ninety-nine years' imprisonment precluding the jury from considering the motion for probation.  *See Mercado v. State*, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981) (holding jury would not have considered motion for probation where punishment was assessed at seventeen years' imprisonment); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(1) (Vernon Supp. 2007) (making defendant ineligible for probation if sentenced to a term of imprisonment that exceeds ten years).  Therefore, the trial court did not err in not allowing the jury to decide whether he was eligible for community supervision.  We overrule Vasquez's second issue.

## IV.  Limiting Instructions

By a third issue, Vasquez contends that the trial court reversibly erred by not providing in the jury charge limiting instructions regarding evidence "of an extraneous offense, single and double hearsay, impeachment, limited relevance, and knowing false testimony."  As a sub-issue, Vasquez complains that his counsel was "deficient" in not requesting "a mid-trial limiting instruction [when the State] offered such evidence."

6

When evidence is admissible for one purpose but not for another purpose, the defendant may request a limiting instruction. *See* TEX. R. EVID. 105. However, "[i]f a defendant does not request a limiting instruction under rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (citing *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001)). Vasquez provides no record cites to show when he requested a limiting instruction under rule 105 each time the complained-of evidence was admitted or where the trial court denied his requests, and we find none. Therefore, the trial court had no obligation to limit the use of evidence in the jury charge. *See id.*; *see also* TEX. R. APP. P. 38.1(h). Additionally, without citation to the record, we cannot discern if counsel was deficient in this regard. *See* TEX. R. APP. P. 38.1(h). We overrule Vasquez's third issue.

## V. Extraneous Offense

In a fourth issue, Vasquez contends that evidence of an extraneous offense–a fight between Vasquez and Cantu–was improperly admitted at trial because the State did not comply with the notice provision of Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b).

We review the trial court's admission of extraneous offense evidence under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone in which reasonable persons might disagree." *Id.*

7

Pursuant to rule 404(b), upon the defendant's timely request, the State must provide notice of its intent to introduce evidence of other crimes, wrongs, or acts in its case-in-chief. TEX. R. EVID. 404(b); *Hernandez v. State*, 176 S.W.3d 821, 822 (Tex. Crim. App. 2005); *McDonald*, 179 S.W.3d at 577. In *Hernandez*, the court of criminal appeals explained that it is error to admit evidence of extraneous offenses when the State has not provided proper notice to the defendant under rule 404(b). *Hernandez*, 176 S.W.3d at 824. However, "because no constitutional error is involved when evidence of uncharged misconduct is admitted without notice, we look to Texas Rule of Appellate Procedure 44.2(b)" when deciding whether the appellant was harmed. *McDonald*, 179 S.W.3d at 578; *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.–Fort Worth 2006, pet. ref'd) (finding error under 404(b) and then conducting a harm analysis under rule 44.2).

Under rule 44.2(b), we disregard any error that did not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b). We determine "whether the error in admitting the evidence 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Hernandez*, 176 S.W.3d at 824 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *Allen*, 202 S.W.3d at 369 (explaining that error is harmless if the evidence is "substantively admissible" unless the error had a substantial influence on the jury's verdict and the defendant was surprised by the evidence). The conviction should not be reversed if, after examining the whole record, we have "a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald*, 179 S.W.3d at 578.

Before trial, Vasquez requested notice from the State of its intent to offer evidence of extraneous offenses at trial. The State filed its notice of intent, but it did not include the

State's intent to offer evidence of a fight between Vasquez and Cantu. Vasquez's 404(b) objection complaining that the State did not provide the required notice was overruled. Because the State did not provide proper notice of this evidence to Vasquez, it was error for the trial court to admit it. *See Hernandez*, 176 S.W.3d at 824. Thus, the trial court abused its discretion. *See McDonald*, 179 S.W.3d at 578. Having found error, we must determine whether the error was harmful. *See id*; *see also* TEX. R. APP. P. 44.2(b).

At trial and on appeal, Vasquez objected only to lack of notice under 404(b). *See McDonald*, 179 S.W.3d at 578 (concluding that because appellant objected only to the lack of notice and did not object to the admissibility of the uncharged misconduct itself, the court only "look[ed] at the harm that may have been caused by the lack of notice"). Therefore, we will only look at the harm that may have been caused by the lack of notice. *See id.*

During direct examination, the State's witness, Erica Cantu, testified about the complained-of fight. She said that about three months after the fight, she and Cantu attended a family gathering where she saw Vasquez, Cantu, and some other people sitting together at a picnic table playing cards. She testified that "everything was calm" and that Vasquez and Cantu conversed without incident. Antonio Sanchez, who attended the same family gathering, also testified that Vasquez and Cantu played cards. Sanchez further testified that the topic of discussion turned to "what happens at fights." According to Sanchez, he told Vasquez, "I always back away from fights," and Vasquez responded, "I'm not going to deal with it. I'll get out my gun . . . . I always carry my 9 under the seat of my car."

Gloria Caballero testified that on the evening before Cantu's body was found, she went to Vasquez's apartment. Vasquez and Cantu were there. Gloria stated, "It seemed like [everybody] was having a good time, except for [Vasquez] and [Cantu]. . . . They looked mad. They were arguing. They were arguing at each other." Caballero said that she left as soon as she could because she "didn't want to be involved in no arguments." The State also provided evidence that Cantu was last seen alive at Vasquez's apartment. Witnesses testified that Cantu's car remained parked at Vasquez's apartment from the time he was last seen alive until after his body was discovered.

The State also presented evidence that Cantu was shot by a nine millimeter bullet. Investigators found an unfired nine millimeter cartridge, a gun lock with no gun, and an empty handgun case in Vasquez's apartment. Richard Hitchcox, a firearms and tool marks examiner with the Texas Department of Public Safety Crime Laboratory, testified that the unfired nine millimeter cartridge found in Vasquez's apartment had been "cycled through a firearm five times. . . . It had five ejector marks on it." Hitchcox then compared the marks from the bullet found in Vasquez's apartment to the ejector marks found on the cartridge cases found at the crime scene. "And based upon those ejector marks, [he] determined that this unfired cartridge was cycled through the same [gun] in which these [cartridge cases found at the crime scene]" had been fired.

We conclude that error in the admission of evidence of the fight was harmless because it did not have a substantial influence on the jury's verdict. *See Hernandez*, 176 S.W.3d at 824*; Allen*, 202 S.W.3d at 369. Although evidence that Vasquez and Cantu engaged in a fight three months earlier may have shown a motive for the crime, it is

10

insignificant in light of (1) evidence that Vasquez owned a nine-millimeter gun, (2) Sanchez's testimony that Vasquez "always" carried a nine millimeter gun under the seat of his car, (3) Gloria's testimony that Vasquez and Cantu argued the morning of the murder, (4) testimony that Cantu's car was found at Vasquez's apartment, and (5) evidence that the unfired bullet found in Vasquez's apartment had been cycled through the same weapon that killed Cantu. We overrule the fourth issue.

## VI. Admission of Evidence

### A. Hearsay

Vasquez appears to complain, in issue five, that the trial court erred in admitting evidence over his hearsay and irrelevancy objections.

#### 1. Applicable Law and Standard of Review

"Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Generally, hearsay is not admissible unless there is an exception. *See* TEX. R. EVID. 802. Upon request of a party, a trial court may exclude evidence, such as hearsay. *Poindexter v. State*, 153 S.W.3d 402, 409 (Tex. Crim. App. 2005). However, "[t]he trial judge has no duty to exclude [hearsay] on his own, and . . . [o]nce admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence. . . . In particular it has probative value and will support a judgment in favor of the party offering it." *Id.*; *see* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."). We review the trial court's

11

admission of evidence, including hearsay, under an abuse of discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *see McDonald*, 179 S.W.3d at 576.

In order to preserve error for review on appeal, the defendant must make a specific, timely objection, and receive an adverse ruling at trial. TEX. R. APP. P. 33.1(a); *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.–Corpus Christi 2006, no pet.). In addition, the objection must be made every time the inadmissible evidence is offered at trial. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S. W.2d 854, 858 (Tex. Crim. App. 1991); *Jaynes*, 216 S.W.3d at 850. However, a party may preserve error without objecting every time the evidence is offered if he either (1) requests a running objection or (2) objects to the evidence outside the presence of the jury pursuant to rule 103(a)(1). TEX. R. EVID. 103(a)(1); *Geuder*, 115 S.W.3d at 13. Any error in the admission of evidence is cured when similar evidence is admitted without objection, either before or after the complained-of-ruling. *Ethington*, 819 S.W.2d at 858 (citing *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)); *Jaynes*, 216 S.W.3d at 850 (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).

### 2. Sergeant Noe Canales and Antonio Sanchez

Vasquez complains of testimony provided by Sergeant Noe Canales and Antonio Sanchez.[5] Vasquez first complains that the trial court admitted hearsay when Sergeant Canales testified that he asked Erica who was the other woman that they saw and that Erica responded "That's —." Vasquez's counsel stated, "I'm going to reiterate my objection

---

[5] To the extent Vasquez argues that Gloria and Deputy Avila quoted third persons, we conclude that this general complaint is inadequately briefed because Vasquez has not provided any citation to the record and has not provided a clear and concise argument for this complaint. *See* TEX. R. APP. P. 38.1(h).

. . . and also the narrative form." Counsel did not object to the testimony as hearsay, and after reviewing the record, we cannot find any previous hearsay objections to Sergeant Canales's testimony that could have been "reiterated." Furthermore, Vasquez did not obtain a ruling on this objection. *See* TEX. R. APP. P. 33.1(a). In another instance, Vasquez objected to testimony of Sergeant Canales as hearsay, but again failed to obtain a ruling. *See id.* Therefore, Vasquez failed to preserve error.

Vasquez next argues that the trial court allowed inadmissible hearsay when Sanchez testified that Vasquez told him that Cantu "beat him up." Vasquez objected based on all of his previous objections. The trial court overruled the objection. Sanchez then testified two additional times, without objection, that Vasquez stated, "You beat me up, you beat me up." Additionally, Sanchez, without objection, added that Vasquez also stated, "[T]hat's the last time you're going to win." Because Vasquez did not renew his objection when Sanchez repeated the allegedly inadmissible evidence, he did not properly preserve error. *See Geuder*, 115 S.W.3d at 13; *Ethington*, 819 S.W.2d at 858; *Jaynes*, 216 S.W.3d at 850.

Finally, Vasquez complains about the following colloquy:

[Sanchez]:     When my mother-in-law said that—she said, (In Spanish) [Rene Rivas] knows where the pistol is that killed Eddie [Cantu]. (In English) And I turned. Is that true, man? Yeah man. Well, let me hear you say it. [Rivas] goes, No man. I told him, (In Spanish), What's up? (In English). [Rivas] goes, Frank had given the gun to Vidal—

[Vasquez]:     Objection, hearsay.

13

[Sanchez]: —to Vidal Caballero. Vidal Caballero gave it to Rene [Rivas]. Rene [Rivas]–well, [and] his cousin Jeremiah for them to hide it.

Here, Vasquez did not obtain a ruling on the hearsay objection and did not object following Sanchez's last statement. *See* TEX. R. APP. P. 33.1(a). However, even assuming his objection was preserved, Sergeant Canales later testified without objection that based on his investigation, Vasquez had given the gun to Vidal Caballero.[6] Error, if any, was cured because evidence that Vasquez had given Vidal the gun was admitted without objection elsewhere. *See Ethington*, 819 S.W.2d at 858.

Vasquez also complains that other testimony provided by Sergeant Canales and Sanchez was hearsay. However, he did not object during trial and therefore did not preserve error for our review. *See* TEX. R. APP. P. 33.1(a); *Jaynes*, 216 S.W.3d at 850.

### 3. Investigator Juan Sifuentes

Vasquez further contends that the trial court erred when it allowed the State's witness, Investigator Juan Sifuentes, to testify regarding an alleged statement made by Vasquez's wife, Minerva Benitez. Although Vasquez mentions the spousal privilege, he only asserts arguments related to hearsay testimony, and we will, therefore, address them as such.

Vasquez appears to argue that inadmissible hearsay "involving inferences from conduct" influenced the jury's verdict causing his substantial rights to be prejudiced. Specifically, Vasquez asserts that when the jury heard that his wife had given a statement

---

[6] Vidal Caballero, a witness for the State, appears to have known both Vasquez and Cantu.

14

and officers then sought an arrest warrant, the trial court allowed the State to introduce, by inference, the substance of Minerva's inadmissible hearsay.

Investigator Sifuentes provided the following testimony concerning his involvement in the search of Vasquez's apartment:

[State]: Okay. Did you determine during the course of your investigation who lived at the apartment?

A: Yes, Minerva Benitez and the defendant.

Q: Okay. Did they have children?

A: Yes.

Q: Okay. Was there anybody, to your knowledge, living there?

. . . .

A: When we entered the apartment, there was no one.

Investigator Sifuentes then testified, without objection, that it appeared that no one had slept in the two bedrooms in the apartment, that State's exhibit 55 showed a scale with two spoons found by the kitchen sink, and that State's exhibit 54 showed a nine millimeter bullet found in the main entrance to the apartment. The complained-of-evidence was then admitted through the following testimony of Investigator Sifuentes:

[State]: Now, during the time—during the time you took these photographs and these photographs were taken and this evidence was taken, was Minerva Benitez present?

A: Yes, she was.

Q: Did you talk to Minerva Benitez?

[Vasquez]: Your Honor, I'm going to object to this line of questioning and renew all objections [Hearsay and spousal privilege] previously

15

made. I'm going to incorporate all of those arguments previously made into my objection.

The Court: Very well. Your objection is overruled.

[Vasquez]: Thank you, Your Honor.

[State]: You may answer.

A: Yes, I spoke to her and–

Q: Okay.

[Vasquez]: Objection, Your Honor.

The Court: Wait until the question is asked of you.

Witness: Okay.

[State]: Now, after you spoke to Minerva Benitez, what did you do? Did you–was that–what did you do with that information?

A: Relayed it to Investigator Canales.

Q: Okay. And at that point, as it pertains to what you know, what happened?

A: A warrant was issued on the defendant.

Q: And when the warrant was issued, this was August the 9th?

[Vasquez]: I'm going to renew my objection to this line of questioning and incorporate all previous arguments made.

. . . .

The Court: Overruled, overruled.

In support of his argument that the State was allowed to introduce, by inference, the substance of his wife's statement, Vasquez relies on *Taylor v. State*, when the court allowed the prosecutor to continue to question a co-defendant witness about her

16

inadmissible extrajudicial statements after she refused to testify under the Fifth Amendment. 653 S.W.2d 295, 300-01 (Tex. Crim. App. 1983). The court of criminal appeals concluded that the prosecutor's questions supplied "the jury with . . . facts that no admissible evidence could provide." *Id.* at 301. It reversed and remanded the case stating:

> No question should be propounded which the prosecutors know to be inadmissible, for if it is done, and the circumstances are such that the person on trial may have been injured thereby, the case should and will be reversed. . . . If it was sought to get before the jury the contents of the written statement without introducing it in evidence, same was improper.

*Id.* at 302.

In this case, the prosecutor did not supply facts from Minerva's statement. At no time did the prosecutor ask Investigator Sifuentes about Minerva's statement. Investigator Sifuentes merely mentioned that he spoke to Minerva. Therefore, *Taylor* is not applicable to our analysis.

Next, Vasquez appears to complain that Investigator Sifuentes's testimony amounted to indirect hearsay. The court of criminal appeals has observed that "[w]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999).

In *Head*, an investigator testified that two witnesses' out-of-court statements were consistent with each other. *Id.* at 260. The trial court overruled defense counsel's objection that the question called for hearsay. *Id.* On appeal, the defendant argued that

17

the substance of the witnesses' statements was communicated to the jury when the investigator testified that their statements were consistent. *Id.* The court of criminal appeals held that the trial court did not abuse its discretion in allowing the jury to hear the disputed testimony. *Id.* at 262-63. It reasoned as follows:

> The trial court could have reasonably concluded that Peterson's testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements. Specifically, the disputed testimony revealed only that the three statements related basically the same facts; it did not reveal the substance of what those facts were. Neither did any other evidence, at that point in the trial, indicate the contents of any of the three statements, what facts the statements had in common, or how any of the facts were consistent. At best, at the time the trial court ruled on the admissibility of the testimony, the jury may have been able to deduce what C.S. had told Peterson by referencing what she had told Smith. The trial court could have reasonably determined that this sort of inferential leap did not provide the requisite degree of certainty "that the State's sole intent in pursuing this line of questioning was to convey to the jury" the contents of the out-of-court statements.

*Id.* at 262.

Whether testimony constitutes indirect hearsay "turns on how strongly the content of the out-of-court statement can be inferred from the context." *Id.* at 261-63. "The question is whether the strength of the inference produces an 'inescapable conclusion' that the evidence is being offered to prove the substance of an out-of-court statement." *Id.* at 262. Vasquez argues that the jury inferred that the content of Minerva's out-of-court statement implicated him in the death of Cantu. We disagree.

At best, the jury may have deduced that Minerva told the investigators something which led them to acquire a warrant. The trial court could have reasonably determined that this "inferential leap did not provide the requisite degree of certainty 'that the State's sole

18

intent in pursuing this line of questioning was to convey to the jury' the contents" of Minerva's out-of-court statement. *See id.* at 260. Therefore, the trial court's ruling that the testimony did not fall within the scope of rule 801(d) was "within the zone of reasonable disagreement," *see Trevino*, 228 S.W.3d at 748, and the trial court did not abuse its discretion in allowing Investigator Sifuentes's testimony. *See Apolinar*, 155 S.W.3d at 186; *see also McDonald*, 179 S.W.3d at 576.

## B.  Relevancy

Finally, Vasquez complains that the trial court erred by admitting evidence of gang affiliation during the guilt-innocence phase of the trial. Although "[g]ang membership evidence is admissible under Rule 404(b) (and Rule 402) if it is relevant to show a non-character purpose that in turn tends to show the commission of the crime," *Ortiz v. State*, 93 S.W.3d 79, 94 (Tex. Crim. App. 2002) (en banc), Vasquez asserts that this evidence is not relevant and therefore inadmissible under rules 401 and 402. *See* Tex. R. Evid. 401, 402 ("Evidence which is not relevant is inadmissible.").

During direct examination, the State asked Sergeant Canales, "And in this particular place and with this particular defendant, did you learn whether or not he was involved in any gangs?" Defense counsel objected "to this line of questioning as irrelevant. It neither proves nor disproves any issue before the Court and is not relevant to any issue before the Court." The trial court overruled Vasquez's objection. Then the following occurred:

[State]:  Did you learn whether he was affiliated with any gangs based on the information he gave the jail?

A:  Yes.

Q:          What is that?

A:          He is a Latin King member.

Q:          And Latin Kings are a street gang?

A:          Yes.

Q:          And where are they based out of?

A:          Here in the Valley.

Vasquez did not continue to object to the questions; therefore, he did not preserve error. *Geuder,* 115 S.W.3d at 13; *Ethington*, 819 S. W.2d at 858; *Jaynes*, 216 S.W.3d at 850.

We overrule issue five.

## VII.  Lack of an Impartial Judge

By issue six, in an argument titled "lack of an impartial judge at jury trial," Vasquez, without citation to the record but incorporating his entire brief generally, asserts that the trial court committed "a series of abuses of its discretion in admitting State's 'inadmissible' evidence as described in this brief."  We construe this argument as a complaint that the trial court admitted evidence improperly because it was biased.  However, we have already overruled Vasquez's issues regarding the admission of complained-of-evidence. Furthermore, without specific references to instances where the trial court lacked impartiality, we cannot review Vasquez's complaint.  *See* TEX. R. APP. P. 38.1(h).  We overrule issue six.

## VIII.  Jury Argument

By issue seven, Vasquez further contends that his substantial rights were violated when, in closing argument, the prosecutor commented on Minerva's failure to testify.

20

However, Vasquez did not object, and therefore has not preserved error. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) ("Before a defendant will be permitted to complain on appeal about an erroneous jury argument . . . he will have to show he objected and pursued his objection to an adverse ruling.").

Vasquez also complains by a sub-issue that the prosecutor made an improper jury argument when she presented evidence outside the record. Vasquez contends the prosecutor improperly stated, "They called several people, ladies and gentlemen. Minerva Benitez was out there and she could have explained it away, and they did not do it. Why? Use your common sense." Vasquez objected that the "commentary wasn't the substance of any statement that she made or didn't make" and that it was improper argument. The trial court overruled Vasquez's objection.

Rule of evidence 504(b)(2) allows counsel to comment on the failure by the accused to call his spouse as a witness, "where other evidence indicates that the spouse could testify to relevant matters." TEX. R. EVID. 504(b)(2); *McDuffie v. State*, 854 S.W.2d 195, 217 (Tex. App.–Beaumont 1993, pet. ref'd) (citing *Johnson v. State*, 803 S.W.2d 272, 282 (Tex. Crim. App. 1990)). In this case, the State presented evidence that Vasquez's wife, Minerva, was present during the search of their apartment when investigators found the nine millimeter bullet. Investigator Sifuentes testified that Minerva signed the consent form to search Cantu's vehicle. Therefore, we conclude that the trial court properly overruled Vasquez's objection to the prosecutor's comment because there was other evidence indicating that Minerva could have testified to relevant matters. *See* TEX. R. EVID. 504(b)(2): *McDuffie*, 854 S.W.2d at 217. We overrule issue seven.

21

IX.  Prosecutorial Misconduct

In issue eight, Vasquez contends that the State improperly cross-examined three defense witnesses and that the State impermissibly commented on his right not to testify at trial.  First, Vasquez generally refers us to the cross-examination of defense witnesses Miguel A. Escandon, Lucinda Benitez, and Sandra Benitez.  On appeal, Vasquez contends that "it is improper for [the State] to cross-examine anyone in such a way as to force that witness to decide another's credibility or to call another witness a liar."  He maintains that Texas courts, courts in other states, and Fifth Circuit courts have determined such questioning amounts to prosecutorial misconduct.  *See U.S. v. Williams*, 343 F.3d 423, 437 (5th Cir. 2003) (finding prosecutorial misconduct when prosecutor asked a witness about the veracity of other witnesses); *United States v. Thomas*, 246 F.3d 438, 439 n.1 (5th Cir. 2001) (commending prosecutor for personally apologizing for telling the jury that a witness was not telling the truth and causing a witness to call another witness a liar).

Vasquez argues on appeal that the State, in this case, engaged in this type of prosecutorial misconduct.  However, Vasquez refers us to only one objection made to this testimony, an objection that the State's question was a "misstatement of the facts."  Moreover, after reviewing the record, we do not find any indication that Vasquez objected during the State's cross-examination of witnesses that the State forced them to decide another witness's credibility or to call another witness a liar.  Because the defense objection at trial does not comport with Vasquez's argument on appeal, his complaint has not been preserved for our review.  *See* TEX. R. APP. P. 33.1 (preserving error requires that the record show the party made a complaint stating the specific grounds for the ruling

22

sought); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005); *see Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) ("An objection stating one legal theory may not be used to support a different legal theory on appeal.").

Next, Vasquez contends that during closing argument the State committed prosecutorial misconduct by impermissibly commenting on his right not to testify at trial. "[T]he prosecutor can [not] comment on the failure of an accused to testify. Such a comment violates the privilege against self-incrimination." *See Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001).

> During closing argument, the prosecutor stated:
>
> Now defense counsel has come up here and he will tell you the little girl said, the aunt said that was not here. How—he would want you to believe that it was planted. Don't let him insult your intelligence.
>
> . . .
>
> Now the most important piece of evidence that he can definitely not explain and should erase any doubt that you have—keep in mind what a reasonable doubt is. It's a doubt based on reason and common sense. That's why we ask that you not leave your common sense out of your deliberations.
>
> . . .
>
> You heard Richard Hitchcox. These were the casings that were found at the scene where Eduardo Cantu's body lay in the middle of the road. The most important piece of evidence that he cannot explain to you—
>
> [Vasquez]: I'm going to object to that form of argument. The burden is not on the defendant to explain anything. It's improper argument.
>
> The Court: Overruled.

23

[State]    –that he cannot change–-there's nothing that he can change. This projectile, this bullet was found in his apartment. By every–-they brought you witnesses who testified that nobody had access to the apartment. He was the only one. . . . He kept on asking. He asked Escandon, Did you ever go there? No. Did you ever see Eddie go in there? No. . . . Okay. So there should be no doubt. It's–-it all connects ladies and gentlemen. . . . You take it all together. And there should be no doubt.

In *Bustamante,* the court stated that the complained-of-statements must be viewed

from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Id.* We cannot conclude that the prosecutor manifestly intended for the argument to be a comment on Vasquez's failure to testify or that the language was of such a character that the jury would naturally and necessarily have taken it to be a comment on Vasquez's failure to testify. *See id.* Even if we construed the language as an implied allusion to Vasquez's failure to testify, it would not be sufficient. *See id*.; *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003). Therefore, we overrule issue eight.

X. Sufficiency of the Evidence

By his ninth issue, Vasquez complains of the legal and factual sufficiency of the evidence. He contends that the evidence is tenuous with "large unexplained gaps in the sequence of events." Vasquez argues that the evidence is not legally or factually sufficient

24

to prove that he caused Cantu's death "as the primary actor" or that he intentionally or knowingly caused Cantu's death.

## A. Standard of Review

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict in order to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.–Corpus Christi 1997, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, and we do not substitute our own judgment for the trier of fact. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd)*; Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151. "All of the evidence is considered by the reviewing court, regardless of whether it was properly admitted." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991).

We review the evidence for factual sufficiency in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless, after considering conflicting evidence, we can say with some objective basis in the record, the great weight and preponderance of the evidence contradicts the verdict. *Id*. at 415.

The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham*, 29 S.W.3d at 152. As such, the trier of fact is free to accept or reject all or any portion of the witness's testimony. *See Ozuna v. State*, 133 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof." *Malik*, 953 S.W.2d at 240. In a hypothetically correct jury charge, the elements of murder pursuant to section 19.02(b)(1) are: (1) intentionally or knowingly, (2) causing the death, (3) of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003).

> Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. Intent may be inferred from words and conduct of the accused. Intent to kill may be inferred from use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result.

*Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). The intent to kill may be inferred by the jury from any facts in evidence which, in their mind, proves the existence of such intent to kill. *Fuller v. State*, 716 S.W.2d 721, 723 (Tex. App.–Corpus Christi 1986, pet. ref'd).

26

## B. Analysis

In support of his legal sufficiency challenge, Vasquez argues that the United States Supreme Court has demonstrated that it is unconstitutional to follow the state review rules set out in *Malik*. Without more, he asserts that *Malik*'s hypothetically-correct-court charge denies an appellant the appellate due process and due course of review guaranteed by the United States and Texas Constitutions. Nonetheless, *Malik* is precedent for this Court, and we will continue to apply its analysis to our sufficiency review. Moreover, the application paragraph sets out that if the jury found from the evidence beyond a reasonable doubt "that on or about August 9, 2004, in Hidalgo County, Texas, [Vasquez] . . . intentionally and knowingly caused the death of [Cantu], by shooting [him] with a deadly weapon, to wit a firearm, then you will find the defendant . . . guilty of the offense of Murder as charged in the indictment." The jury charge includes the same elements found in a hypothetically correct jury charge; therefore, our analysis in this case would be the same whether or not guided by *Malik*.

Vasquez also asserts that the jury made requisite fact findings not supported by the record. However, he does not provide citations to the record regarding what specific findings he is challenging. *See* Tex. R. App. P. 38.1(h). Therefore, we will only address whether the evidence establishes that he intentionally or knowingly caused Cantu's death.

The State presented evidence that Vasquez owned a nine millimeter gun and that he kept it in his car. The evidence established that Cantu was last seen alive at Vasquez's apartment. Several hours before investigators found Cantu's body, a witness saw Vasquez and Cantu arguing. Sergeant Canales testified that, based on his investigation, he

27

determined that on the morning of the homicide Vasquez gave Vidal a weapon and Gloria saw Vasquez leaving Vidal's home. Gloria testified that she saw Vasquez at the apartment complex coming from the direction of where Vidal was staying. She stated that Vasquez did not look her in the eyes even though they bumped into each other. Sanchez also provided testimony that Vasquez gave Vidal a gun to hide after Cantu was killed. Rene Rivas testified that Vidal gave Jeremiah Zamora, Rivas's cousin, a gun to hide. The gun was wrapped in a red shirt. At Vasquez's apartment, investigators found a gun lock without a gun, an empty gun case, and a nine millimeter bullet that was cycled through the same nine millimeter gun that killed Cantu. Cantu's car was located at Vasquez's apartment.

Sergeant Acosta testified that when investigators located Vasquez and told him about Cantu's murder, he stated, "he didn't know what [the investigators] were talking about, he wasn't responsible for what had occurred and, in fact, he was not in town, he was out of town in Mexico, in Progreso at Boys' Town [the night/morning of the murder]." Investigators found Cantu's body at approximately 6:00 a.m. on August 9, 2004. Vasquez's witness, Irma Chairez, testified that at about 8:30 a.m. on August 9, she picked Vasquez up at his apartment and took him to Mexico.

Viewing the evidence in the light most favorable to the verdict, we conclude that any rational juror could have found that Vasquez intentionally or knowingly caused the death of Cantu beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Rosillo*, 953 S.W.2d at 811.

Vasquez also generally complains that the evidence is factually insufficient to support the jury's verdict. In making our sufficiency determination, we must consider the

evidence the appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Here, Vasquez does not point to any particular evidence that undermines the jury's verdict. Therefore, after reviewing the evidence in a neutral light, we conclude that it is not so weak that the jury's verdict seems clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Furthermore, the jury accepted the State's evidence and rejected testimony from Vasquez's witness. *See Ozuna*, 133 S.W.3d at 606. We cannot say with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *See Watson*, 204 S.W.3d at 415. We overrule issue nine.

### XI. Conclusion

We affirm the trial court's judgment.

_____

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 24th day of April, 2008.