02-10-043-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00043-CR

 

 


 
 
 John William McNatt
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          A
jury convicted Appellant John William McNatt of recklessly causing serious
bodily injury to a child and assessed his punishment at twenty years’
imprisonment.  See Tex. Penal Code Ann. § 22.04(a)(1), (e) (West 2011). 
Appellant contends in five points that the trial court erred by admitting
evidence of extraneous offenses, by refusing to suppress his videotaped interview,
and by denying his motions for mistrial because of improper opinion testimony
by the investigating detective and because of alleged improper punishment-phase
arguments by the State.  We affirm.

II. 
Background[2]

          The
State alleged that Appellant, on November 16, 2008, caused serious bodily
injury to his four-month-old son by shaking him.  The State presented evidence
that Appellant was alone with the child that morning after Mary, Appellant’s
then-girlfriend and the child’s mother, left for work; that the child’s injury
required a great amount of force; and that as a result of the injury, the child
has a shunt in his head and suffers from seizures.  The jury also watched the
January 2009 videotaped interview in which Appellant made incriminating
statements to Detective Richard Chapman, the investigating officer.  Appellant
testified at trial that he made the incriminating statements only to protect
Mary from potential prosecution.  Appellant also presented testimony by Bexar
County Deputy Chief Medical Examiner Dr. Kimberly Molina, who testified about
her opinion that the child’s injuries could not have been caused by only shaking
the child.

III. 
Extraneous Offense Evidence

          Appellant
contends in his first point that the trial court abused its discretion by
overruling his objections to “numerous extraneous offenses” introduced during
the guilt-innocence phase of trial.  It is not clear from his brief, but
Appellant seems to complain about the admission of five alleged extraneous acts
or offenses:  (1) a November 2007 incident in which Appellant cut his wrists
after Mary tried to break up with him; (2) a December 5, 2008 incident at
Mary’s apartment in which Appellant cut his wrists, broke Mary’s cell phone,
and held a knife to Mary; (3) the stormy nature of Appellant and Mary’s
relationship; (4) a December 5, 2008 incident in which Appellant told Mary that
he would hurt their child if Mary did not allow him to come to her home; and
(5) a 2003 incident in which Appellant allegedly pulled a knife on his high
school girlfriend.  The State responds that Appellant failed to preserve most
of his complaints for appellate review and that the other evidence was
admissible under code of criminal procedure article 38.37. 

A.  Preservation
of Error

          To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Layton v. State,
280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address
the merits of an issue that has not been preserved for appeal.  Ford v.
State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

          If
a trial court hears objections to proffered evidence outside the jury’s
presence and rules that the evidence is admissible, the objections are deemed
to apply to the evidence when it is admitted before the jury without the
necessity of repeating the objections.  Tex. R. Evid. 103(a)(1); Geuder v.
State, 115 S.W.3d 11, 13–14 (Tex. Crim. App. 2003); Ethington v. State,
819 S.W.2d 854, 859 (Tex. Crim. App. 1991).  If the party did not preserve
error through an objection outside the jury’s presence, the party must continue
to object each time the objectionable evidence is offered or make a running
objection and get a ruling.  Martinez v. State, 98 S.W.3d 189, 193 (Tex.
Crim. App. 2003) (citing Ethington, 819 S.W.2d at 859); Fuentes v.
State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 U.S.
1026 (1999).  Moreover, a trial court’s erroneous admission of evidence will
not require reversal when other such evidence was received without objection,
either before or after the complained-of ruling.  Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998).  This rule applies whether the other
evidence was introduced by the defendant or the State.  Id.

          We
hold that Appellant failed to preserve error concerning the November 2007
incident.  At a hearing outside the jury’s presence, the trial court sustained
Appellant’s objection to evidence of the November 2007 incident.  Nevertheless,
the State later questioned Appellant about the November 2007 incident, and
Appellant did not object.  Because the trial court had sustained his initial
objection to the November 2007 incident instead of overruling it, Appellant was
required to object again when the State questioned him about it in front of the
jury.  Cf. Tex. R. Evid. 103(a)(1) (providing that objection outside
jury’s presence preserves error if the trial court “rules that such evidence be
admitted”).  Because Appellant did not object when questioned in front of the
jury about the November 2007 incident, he failed to preserve his complaint for
appellate review.  We overrule this portion of Appellant’s first point.

Appellant
also failed to preserve his complaint about the December 5, 2008 incident at
Mary’s apartment.  Appellant objected at a hearing outside the jury’s presence
to any evidence of this incident, and the trial court overruled the objection. 
However, Appellant himself admitted evidence of this incident by playing the
portion of his videotaped interview in which he and Detective Chapman discussed
the incident; the State had elected not to play that portion of the videotaped
interview for the jury.  See Leday, 983 S.W.2d at 718.  We therefore
overrule this portion of Appellant’s first point.

We
also hold that the portion of Appellant’s first point complaining of the
evidence of his and Mary’s stormy relationship is inadequately briefed. 
Although Appellant cites to the portion of the record containing his objection
outside the jury’s presence to evidence of his and Mary’s relationship, he does
not cite to any portion of the record where any such evidence was actually
admitted, and we find none other than the November 2007 and December 5, 2008
incidents (discussed above) for which Appellant failed to preserve error.  See
Tex. R. App. P. 38.1(i) (requiring briefs to contain appropriate citations to
the record); Akin v. State, No. 02-08-00062-CR, 2009 WL 806902, at *1–2
(Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op., not designated for
publication) (overruling appellate points for failure to include citations to
authority and to the appellate record).  We overrule this portion of
Appellant’s first point.

As
to the two other extraneous offenses or acts, Appellant preserved his complaints
for appellate review because he obtained an adverse ruling outside the presence
of the jury in one instance and objected when the matter was raised in front of
the jury in the other instance.  See Tex. R. Evid. 103(a)(1); Geuder,
115 S.W.3d at 13–14; Martinez, 98 S.W.3d at 193; Ethington, 819
S.W.2d at 859.  Thus, we will consider the merits of the remainder of
Appellant’s first point.

B. 
Applicable Law

          We
review a trial court’s decision to admit or to exclude evidence under an abuse
of discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000); Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App.), cert.
denied, 522 U.S. 917 (1997).  A trial court does not abuse its discretion
as long as the decision to admit or to exclude the evidence is within the zone
of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990) (op. on reh’g); see Green v. State, 934 S.W.2d
92, 101–02 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997).  “We
give great discretion to the trial court in matters of admissibility of
evidence if correct under any theory of law, even if the trial court’s
underlying reason was wrong.”  Wenger v. State, 292 S.W.3d 191, 202–03
(Tex. App.—Fort Worth 2009, no pet.) (citing Romero v. State, 800 S.W.2d
539, 543–45 (Tex. Crim. App. 1990)).

          It
is improper to try a defendant for being a criminal generally.  Alba v.
State, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing Nobles v.
State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992), cert. denied, 516
U.S. 1077 (1996)).  In that regard, rule of evidence
404(b) states, “Evidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity
therewith.”  Tex. R. Evid. 404(b).  However, for cases like
this one in which assaultive and other offenses against a child younger than
seventeen years old are alleged, code of criminal procedure article 38.37
provides as follows:

Notwithstanding Rules
404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts
committed by the defendant against the child who is the victim of the alleged
offense shall be admitted for its bearing on relevant matters, including:  

 

(1)  the state of mind of
the defendant and the child; and 

 

(2) the previous and
subsequent relationship between the defendant and the child.

 

Tex.
Code Crim. Proc. Ann. art. 38.37, §§ 1(2), 2 (West Supp. 2010).  

C. 
Discussion

During
a hearing outside the jury’s presence, Appellant unsuccessfully objected to
evidence that he told Mary by telephone on December 5, 2008 (approximately
three weeks after their child was injured) that he would hurt their child if
Mary did not allow him to come to her apartment, and Mary testified to those
facts in front of the jury shortly thereafter.  The State argues that Mary’s
testimony was admissible under article 38.37 of the code of criminal procedure.

In Lincicome
v. State, the court held that evidence of a prior extraneous offense
against the infant victim was admissible in Lincicome’s trial for causing
serious bodily injury to that infant.  See 3 S.W.3d 644, 645, 649 (Tex.
App.—Amarillo, no pet.).  The State solicited evidence that Lincicome attempted
to smother the infant victim with a pillow, and it offered evidence that
Lincicome had previously burned the infant victim with hot water to teach the
infant a lesson.  See id. at 646, 649.  The appellate court held that
the extraneous act evidence was admissible under article 38.37 because “it can
quite easily be said that the evidence served the purpose of illustrating both
appellant’s mind-set towards and interaction with the child; in other words,
the evidence bore on the relationship between appellant and the victim.”  Id.
at 649.  In this case, the State alleged and offered evidence that Appellant
had violently shaken his child in November 2008, causing serious bodily
injury.  The evidence that Appellant threatened to harm his child only three
weeks later was admissible under article 38.37 to prove both Appellant’s
mindset (that is, state of mind) toward his child and his relationship with his
child.  See Tex. Code Crim. Proc. Ann. art. 38.37, § 2; Lincicome,
3 S.W.3d at 649.  It matters not that the December 5, 2008 threat occurred
after the November 16, 2008 injury to the child.  See Tex. Code Crim.
Proc. Ann. art. 38.37, § 2 (permitting introduction of evidence of the “previous
and subsequent relationship between the defendant and the child”); Pool v.
State, 981 S.W.2d 467, 469 (Tex. App.—Waco 1998, pet. ref’d) (overruling
point complaining of post-offense evidence relating to the relationship between
the victim and defendant).  We overrule this portion of Appellant’s first
point.[3]

Appellant
also complains of the State’s question during his cross-examination asking him whether
he had pulled a knife on his high school girlfriend when she broke up with him
after a three-year relationship.  Appellant answered the question in the
negative as his attorney objected to the question under rule 404(b).  This
court has held that a negative answer to a question about extraneous activity
presents no evidence of an extraneous offense.  See Martin v. State, 626
S.W.2d 928, 930 (Tex. App.—Fort Worth 1982, pet. ref’d).  Thus, although
Appellant objected, the trial court did not actually admit evidence of an
extraneous offense since Appellant answered the question in the negative.  See
id.  We overrule the remainder of Appellant’s first point.

IV. 
Motion to Suppress

          Appellant
contends in his second point that the trial court erred by refusing to suppress
his videotaped interview because it was not voluntarily given. Specifically,
Appellant argues that Detective Chapman coerced or induced him into making
incriminating statements, and Appellant references without separately briefing
the Fifth and Fourteenth Amendments to the United States Constitution; Article
1, Section 19 of the Texas constitution; and articles 38.21 and 38.22 of the
Texas Code of Criminal Procedure.[4] 

A.  Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total deference to a trial court’s rulings on questions
of historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.  Amador, 221 S.W.3d at 673; Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652–53 (Tex. Crim. App. 2002).  We must uphold the trial court’s ruling if it
is supported by the record and correct under any theory of law applicable to
the case even if the trial court gave the wrong reason for its ruling.  State
v. Stevens, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v.
State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541
U.S. 974 (2004).

          When
there are no explicit fact findings and neither party timely requested findings
and conclusions from the trial court, we imply the necessary fact findings that
would support the trial court’s ruling if the evidence, viewed in the light
most favorable to the trial court’s ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see Wiede
v. State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).  We then review the
trial court’s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.  State v. Kelly,
204 S.W.3d 808, 819 (Tex. Crim. App. 2006).  

B. 
Applicable Law

          An
accused’s statement is admissible evidence if the accused made it freely and
voluntarily and without compulsion or persuasion.  See Tex. Code Crim.
Proc. Ann. art. 38.21 (West 2005).  When deciding whether a statement was
voluntary, we consider the totality of the circumstances in which the statement
was obtained.  Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App.
1997); Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001,
pet. ref’d).  A confession is involuntary if circumstances show that the
defendant’s will was “overborne” by police coercion.  Creager, 952
S.W.2d at 856; see Davis v. State, 313 S.W.3d 317, 337 (Tex. Crim. App.
2010) (“A statement is obtained in violation of constitutional due process only
if the statement is causally related to coercive government misconduct.”).  The
defendant’s will may be “overborne” if the record shows that there was
“official, coercive conduct of such a nature” that a statement from the
defendant was “unlikely to have been the product of an essentially free and
unconstrained choice by its maker.”  Alvarado v. State, 912 S.W.2d 199,
211 (Tex. Crim. App. 1995); Frank v. State, 183 S.W.3d 63, 75 (Tex. App.—Fort
Worth 2005, pet. ref’d); see Davis, 313 S.W.3d at 337 (quoting  Schneckloth
v. Bustamonte, 412 U.S. 218, 225–26, 93 S. Ct. 2041, 2047 (1973)).

If a
promise made by a person in authority induced a confession, then that
confession is inadmissible.  Penry v. State, 903 S.W.2d 715, 748 (Tex. Crim.
App.), cert. denied, 516 U.S. 977 (1995); Alvarez v. State, 649
S.W.2d 613, 620 (Tex. Crim. App. 1982), cert. denied, 464 U.S. 849 (1983).
 But before a promise will render a confession inadmissible, the promise must
be shown to have induced the confession because it was positive for the
defendant, made or sanctioned by someone in authority, and of such an
influential nature that the appellant might speak untruthfully in response.  Muniz
v. State, 851 S.W.2d 238, 254 (Tex. Crim. App.), cert. denied, 510
U.S. 837 (1993).  In our review, we look to whether the circumstances of the
promise would reasonably induce a defendant to admit to a crime he did not
commit.  See Sossamon v. State, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991),
abrogated on other grounds by Graham v. State, 994 S.W.2d 651 (Tex. Crim.
App. 1999).             

C.  Discussion

          The
trial court conducted an evidentiary hearing outside the presence of the jury
concerning Appellant’s objection to his videotaped interview; Detective Chapman
and Appellant testified, and the trial court watched a portion of the interview
during the hearing.  The trial court thereafter denied Appellant’s motion to
suppress. 

          Appellant
identifies four statements by Detective Chapman that he contends rendered his
statement coerced and involuntary:  (1) that unless Appellant admitted
intentional or accidental responsibility for the child’s injuries, Detective
Chapman would have to investigate Mary, and she might give birth to their
second child in jail; (2) that if Appellant would give information that the
incident was an accident, Appellant would not be in any trouble because
accidents happen; (3) that Detective Chapman had spoken with Appellant’s probation
officer and that she was willing to work with Appellant; and (4) that Detective
Chapman believed Appellant “lost it for just a minute” and that “if we can get
you some help, there would be a point in time that you can still be with your
child.” 

          Detective
Chapman denied making the first two statements, and neither statement appears
on the videotaped interview because they were allegedly made during the five
minutes that Appellant and Detective Chapman were in the hallway outside the
interview room.[5]  The trial court is the
sole judge of the credibility of the witnesses, and it could have, with support
from the record, believed Detective Chapman and disbelieved Appellant.  See
Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007) (citing Green
v. State, 934 S.W.2d at 98).  And as to the third and fourth statements by
Detective Chapman—that he and Appellant’s probation officer would try to help
Appellant—the trial court could have, with support from the record, found that
no coercion occurred and that no specific promises were made.  See Davis,
313 S.W.3d at 337 (“Coercive government misconduct renders a confession
involuntary if the defendant’s ‘will has been overborne and his capacity for
self-determination critically impaired.’”) (quoting Schneckloth, 412
U.S. at 225–26, 93 S. Ct. at 2047); Garcia v. State, 919 S.W.2d 370, 388
(Tex. Crim. App. 1994) (holding detective’s statements “that he [would] try to
‘help him out’ or would ‘talk to the D.A.’” were not specific promises); Redd
v. State, No. 14-08-01089-CR, 2009 WL 4810190, at *5 (Tex. App.—Houston
[14th Dist.] Dec. 15, 2009, pet. ref’d) (mem. op., not designated for
publication) (“General statements by an officer that he is there to help
defendant and is the only one who can help defendant do not indicate the ‘if-then’
relationship required to establish a promise.”) (citing Chambers v. State,
866 S.W.2d 9, 20 (Tex. Crim. App. 1993); Dykes v. State, 657 S.W.2d 796,
797 (Tex. Crim. App. 1983)).

Based
on its assessment of the credibility of the witnesses, the trial court could
have found that no promise was made to Appellant that would have likely led him
to falsely implicate himself, that Appellant’s will was not overborne, and that
the totality of the circumstances supported the voluntary nature of his
statement.  Indeed, the trial court stated at the conclusion of the hearing,
“From the tape, the defendant clearly knew he could walk out because he did. 
The defendant knew he could walk out because he did walk out.”[6] 
We must give great deference to the trial court’s findings, which are supported
by the evidence presented at the hearing.  See Garza, 213 S.W.3d at
346.  We hold that the trial court did not abuse its discretion by admitting
Appellant’s videotaped interview into evidence, and we overrule Appellant’s
second point.

V. 
Motions for Mistrial

          Appellant
argues in his third point that the trial court erred by denying his motion for
mistrial after Detective Chapman gave his unsolicited opinion that Appellant
was evasive and that he minimized his conduct during the videotaped interview. 
Appellant contends in his fourth and fifth points that the trial court erred by
denying his two motions for mistrial during the State’s punishment-phase closing
argument. 

A. 
Applicable Law

          When
a trial court sustains an objection and instructs the jury to disregard but
denies a defendant’s motion for a mistrial, the issue is whether the trial
court abused its discretion by denying the mistrial.  Hawkins v. State,
135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  Only in extreme circumstances,
when the prejudice caused by certain testimony or improper argument is
incurable, i.e., “so prejudicial that expenditure of further time and expense
would be wasteful and futile,” will a mistrial be required.  Id.; Simpson
v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied,
542 U.S. 905 (2004); Orr v. State, 306 S.W.3d 380, 403–04 (Tex.
App.—Fort Worth 2010, no pet.).  In determining whether a trial court abused
its discretion by denying a mistrial, we balance three
factors:  (1) the severity of the misconduct (prejudicial
effect); (2) curative measures; and (3) the certainty of conviction
or the punishment assessed absent the misconduct.  Hawkins, 135 S.W.3d
at 77; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op.
on reh’g), cert. denied, 526 U.S. 1070 (1999).  The trial court is in
the best position to balance these factors.  Orr, 306 S.W.3d at 404.

B. 
Detective Chapman’s Unsolicited Opinion

          The
following exchange occurred after the State played the second portion of
Appellant’s videotaped interview for the jury:

[Prosecutor:] 
Detective Chapman, when you’re doing an interview like this, of course you’re
trying to get information.  Do you use various investigative techniques or
methods to try to elicit that information in your interviews?

 

[Detective Chapman:] 
Yes, ma’am.

 

[Prosecutor:]  Did
you use some techniques in the interview portion the jury just saw with the
defendant?

 

[Detective Chapman:] 
I did.

 

[Prosecutor:]  What
did you do to try to get your information out?

 

[Detective Chapman:] 
Well, usually — and every interview is going to be different because every
victim or suspect or who you’re talking to is going to be different.  With him,
he was being very evasive.  And I believed, especially toward the end part of
the interview, was minimizing what was happening with the victim.

 

[Appellant’s
Counsel:]  Well, Your Honor, we’re going to object to that for the reason that
is nonresponsive to the question she asked, what kind of technique he had.

 

[Trial Court:] 
Sustained.

 

[Appellant’s
Counsel:]  Ask the Court to instruct the jury not to consider the statement
made by the witness.

 

[Trial Court:]  I
will instruct the jury to disregard the last statement of the witness.

 

[Appellant’s
Counsel:]  Once again, because of the prejudicial nature of this, ask for a
mistrial.

 

[Trial Court:]  I’ll
deny the motion for mistrial. 

 

           Appellant
does not explain why the trial court’s prompt instruction for the jury to
disregard Detective Chapman’s statement was allegedly insufficient.  We note
that the jury had just watched Appellant’s videotaped interview when Detective
Chapman offered his unsolicited opinion and was thus able to independently
determine whether Appellant was minimizing his role and being evasive.  We also
note that Detective Chapman later testified without objection on
cross-examination that Appellant tried to minimize his culpability.  Because
Appellant does not explain how Detective Chapman’s statement influenced the
jury to such an extent that the instruction to disregard could not have cured
any prejudice and because we presume that the jury followed the trial court’s
instruction to disregard in the absence of evidence to the contrary, we cannot
conclude that the trial court abused its discretion by overruling Appellant’s
motion for mistrial following Detective Chapman’s statement.  See Ovalle v.
State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); Orr, 306 S.W.3d at
405 (stating that reviewing courts presume the jury followed the trial court’s
instruction to disregard “[i]n the absence of evidence that it did not”).  We
overrule Appellant’s third point.

C. 
Punishment Phase Closing Arguments

          Appellant
contends in his fourth and fifth points that the trial court erred by denying
his motions for mistrial after the State made two alleged improper arguments
during the punishment phase of trial.  To be permissible, the State’s jury
argument must fall within one of the following four general
areas:  (1) summation
of the evidence; (2) reasonable deduction from the evidence;
(3) answer to argument of opposing counsel; or (4) plea for law
enforcement.  Felder v. State, 848 S.W.2d 85, 94–95 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State, 493
S.W.2d 230, 231 (Tex. Crim. App. 1973).

Appellant
first complains of the prosecutor’s reference to a music video for a song by
Justin Timberlake.  During the guilt-innocence phase, the State cross-examined Appellant
about the contents of his MySpace page as follows:

Q. [Prosecutor:]  So your
testimony is that you loved Mary so much that you’re willing to come in and
tell this detective [on January 21, 2009] that you did this, but a week before,
two weeks before, your MySpace page says, What goes around comes around.  And
let’s talk about that.  That’s in reference to a Justin Timberlake video where
a boyfriend runs a girlfriend off the road and kills her, isn’t it?

 

A. [Appellant:]  I
wasn’t – I wasn’t aware of that. 

 

The
trial court also admitted a January 5, 2009 copy of Appellant’s MySpace page,
which included the following statements:  “WHAT GOES AROUND COMES BACK
AROUND!!! ‘F[%&!] YOU MARY!!!!!!!!!’”  The MySpace page also included a
hyperlink, which appears to link to the video of the Justin Timberlake song. 
Appellant denied posting the comments about Mary on his MySpace page. 

The
following exchange occurred during the State’s punishment-phase closing
argument:

[Prosecutor:]  What
goes around comes around.  Oh, yeah, that was the video where the guy kills the
girl in the end.  Yeah, heard about that, too.

 

          [Appellant’s
Counsel:]  We object, Your Honor, that’s outside the record, the comment that
was just made.

 

          [Trial
Court:]  Sustained.

 

          [Appellant’s
Counsel:]  We would ask the jury be instructed not to consider that comment by
the prosecutor for any reason in their deliberations.

 

          [Trial
Court:]  Jury will disregard the last comment.

 

          [Appellant’s
Counsel:]  And because of the comment, we would ask the Judge to declare a
mistrial.

 

          [Trial
Court:]  You’re overruled.

 

          [Prosecutor:] 
Ladies and gentlemen, you know what the testimony has been in this trial.  And
I’m in no way trying to substitute my recollection of it for yours.  You know
what it was and you know what this man has done and what he’s capable of doing.

 

          In
his fifth point, Appellant complains of the State’s hypothetical argument
during its rebuttal.  During his punishment-phase closing argument, Appellant’s
counsel stated:

[W]ell, you hear all
these bad things from these people that have personal relationships with [Appellant]. 
But the people who know him best, his family, all come in – including Mary,
including her mother – and say that [Appellant] when he came to taking care of
children, always shows loving care and kindness.  His sister says it.  She’s
let him keep her child.  His mother, his stepfather talk about, you know, how
nice he was to children, babies and all that kind of stuff. 

 

The
following exchange occurred during the State’s rebuttal argument:

[Prosecutor:]  And
defense counsel’s argument that, you know, everyone says he was a really nice
guy.  So he’s good with kids, so it’s not a big deal, let’s just move on down
the road.  You know what?  If I were in a relationship and I was great to that
person for 20 years, but on the 20th anniversary I stabbed him, I don’t think
it matters how many birthday cards I sent him.

 

[Trial Court:]  Two
minutes.

 

[Prosecutor:]  At
some point you are responsible for your actions.  At some point –

 

[Defense Counsel:] 
Object, Your Honor.

 

[Prosecutor:]  He has
to be held accountable.

 

[Defense Counsel:] 
We’re going to object she’s arguing out of the record that anybody got stabbed
by the defendant.

 

[Trial Court:] 
Sustained.

 

[Prosecutor:]  At
some point –

 

[Defense Counsel:] 
Did you sustain my objection?

 

[Trial Court:]  I
did.

 

[Defense Counsel:] 
May I have an instruction, please, for the jury not to consider that argument.

 

[Trial Court:]  The
jury will not consider it.

 

[Defense Counsel:] 
We will ask for a mistrial.

 

[Trial Court:] 
Overruled. 

 

An
instruction by a trial court to disregard an improper argument will usually
cure the error.  Phillips v. State, 130 S.W.3d 343, 347 (Tex.
App.—Houston [14th Dist.] 2004), aff’d, 193 S.W.3d 904 (Tex. Crim. App.
2006) (citing Campos v. State, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979)).
 When the trial court instructs a jury to disregard, we presume the jury
follows the trial court’s instructions.  Id. at 347–48 (citing Waldo
v. State, 746 S.W.2d 750, 752–53 (Tex. Crim. App. 1988)).  However, if the
error is extremely prejudicial and cannot be withdrawn from the jurors’ minds,
the trial court should declare a mistrial.  Lusk v. State, 82 S.W.3d 57,
60 (Tex. App.––Amarillo 2002, pet. ref’d).  Accordingly, a mistrial is
appropriate only when the event is so emotionally inflammatory that curative
instructions are not likely to prevent the jury from being unfairly prejudiced
against the defendant.  Id.

Other
than stating that the State’s arguments did not fall within the four generally
accepted categories for closing argument, Appellant does not attempt to explain
why the trial court’s instructions not to consider the State’s arguments were
insufficient.  The entirety of Appellant’s argument about the alleged
inadequacy of the trial court’s instructions to disregard states:  “Appellant
also contends that the complained of arguments were so improper that they could
not be rendered ineffective by the instructions to disregard.  See Martinez
v. State, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000).”[7]


Although
the State argues that the first argument involved a reasonable deduction from
the evidence and that the second comment was both a response to Appellant’s
request for leniency and a plea for law enforcement, we will assume without
deciding that both comments were improper.  Based on that assumption, neither
comment was so inflammatory, however, as to be incurable, and the record does
not reflect a flagrant disregard for the permissible bounds of argument.  The
comments constituted only two isolated portions of the prosecutor’s closing argument,
were not repeated, and were each followed by a prompt instruction to disregard.
 We presume that the jury followed the trial court’s instructions to disregard,
and we note that Appellant points to nothing in the record indicating that the jury
did not follow the instructions.  See Wesbrook v. State, 29 S.W.3d 103, 116
(Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001).  And although
the jury assessed Appellant’s punishment at the maximum of twenty years, the
jury heard evidence that extreme force was necessary to inflict injury of the
type that the child suffered; that the child still suffers from the injury and
will likely continue to suffer in the future; that Appellant had stalked his
high school girlfriend; that Appellant had cut his wrists on at least three
occasions because of problems in his relationships with his high school
girlfriend and Mary; and that Appellant has prior convictions for theft,
criminal trespass, burglary of a habitation, obtaining a controlled substance
by fraud, and driving while intoxicated.  Also, the present offense was
committed shortly after Appellant was released from a drug treatment program.  See
Olive v. State, Nos. 05-09-00419-CR, 05-09-420-CR, 2010 WL 1665276, at
*3 (Tex. App.—Dallas Apr. 27, 2010, pet. ref’d, untimely filed) (mem. op., not
designated for publication).[8]  Considering the evidence
and the nature of the offense, we cannot conclude that the prosecutor’s remarks
contributed to the punishment assessed.  See Hawkins, 135 S.W.3d at 85
(concluding lengthy sentence more likely attributable to numerous prior
convictions over extended period of time and fact that some offenses were
committed before punishment on others had expired); Olive, 2010 WL
1665276, at *3.  Under the facts of this case, we conclude that the trial court
did not abuse its discretion by denying Appellant’s punishment-phase motions
for mistrial.  We overrule Appellant’s fourth and fifth points.

VI. 
Conclusion

Having
overruled each of Appellant’s five points, we affirm the trial court’s
judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 6, 2011









[1]See Tex. R. App. P. 47.4.





[2]Because Appellant does not
challenge the sufficiency of the evidence, we only briefly set forth the
evidence presented at trial.





[3]To the extent that
Appellant argues on appeal that evidence of the December 5, 2008 threat against
the child should have been excluded under rule of evidence 403, Appellant
failed to preserve that complaint for appellate review by failing to object on
that ground at trial.  See Martines v. State, No. 01-10-00172-CR, 2011
WL 2502839, at *14–15 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.)
(holding Martines failed to preserve rule 403 challenge to evidence admissible
under article 38.37 by failing to object on rule 403 grounds at trial).





[4]As mentioned above,
Appellant himself played the first portion of the videotaped interview for the
jury.  Thus, we confine our analysis of Appellant’s second point to the second
portion of the videotaped interview.





[5]At the end of first
portion of the videotaped interview, Appellant became frustrated with Detective
Chapman’s repeated requests that Appellant take a polygraph test, and Appellant
left the interview room.  Appellant and Detective Chapman then had an
unrecorded conversation in the hallway for approximately five minutes. 





[6]The trial court did not
make any other express findings. 





[7]The court of criminal
appeals held in Martinez that the prosecutor’s reference to facts
outside the record of that case were “not so extreme as to render ineffective
an instruction to disregard.”  Id.





[8]In Olive, the court
affirmed the trial court’s denial of Olive’s motion for mistrial, which was
made after the State referred to information outside the record during
punishment-phase closing arguments.  Id.  The court noted that although
the jury assessed the maximum sentence, the jury heard evidence that Olive “was
a drug addict; had prior convictions for burglary of a habitation, unauthorized
use of a motor vehicle, and possession with intent to deliver cocaine; and his
drug use was the cause of his problems.”  Id. at *1, *3.